**GAMER CO. et al. v. GAMAGE.** (No. 2536.)

(Court of Civil Appeals of Texas. Texarkana. April 19, 1922. Rehearing Denied May 4, 1922.)

1. **New trial ⚫⚓58—Not granted on ground that jury failed to pass on issue.**

In a personal injury suit, where the jury awarded damages to plaintiff, the court did not err in refusing a new trial on the ground that it appeared from the verdict that the jury failed to pass on the issue submitted to them as to whether plaintiff was guilty of contributory negligence, for, unless they ignored the special charges with respect thereto, which will not be assumed, they must have determined such issue in plaintiff's favor.

2. **Corporations ⚫⚓630(1)—Cannot maintain or defend suit after three years from dissolution.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1206, authorizing officers of a dissolved corporation to maintain or defend judicial proceedings in its name, and declaring that its existence may be continued for three years after dissolution for the purpose of settling its affairs, dissolution becomes final and operative for all purposes at the expiration of such time, and the corporation cannot thereafter maintain or defend a suit to which it was a party.

3. **Limitation of actions ⚫⚓104(2)—Principal stockholder, having assumed liabilities of dissolved corporation and defended suit against it, could not interpose statute as bar to action against him.**

The principal stockholder and president of a corporation, who assumed its liabilities, but

defended a suit against it in its name for over 10 years after its dissolution, without disclosing to plaintiff the fact that it had been dissolved, could not avail himself of the 2-year statute of limitations on the assumption that he was not a party to the suit until made one by an amended petition filed after plaintiff's discovery of the fact of such dissolution; the statute running only from the time the cause of action against the proper defendant was discovered or might have been discovered by the exercise of diligence.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by Henry C. Gamage against the Gamer Company and others, in which Charles Gamer was made a party defendant. From a judgment against the Company and Charles Gamer, they appeal. Appeal of Gamer Company dismissed and judgment against Charles Gamer affirmed.

The Gamer Company, a corporation under the laws of Texas, employed appellee to operate a machine it used for cutting leather washers. January 21, 1909, which was only a few days after he was placed in charge of the machine, appellee had three fingers of his left hand cut off by it. Claiming the injury was due to negligence on the part of the Gamer Company in permitting the machine to be in a defective condition and in failing to warn him of the danger he incurred in using it, appellee on February 15, 1909, commenced this suit for damages against said company. He recovered a judgment, which was reversed by the Court of Civil Appeals in 1912. 147 S. W. 721. On another trial appellee again recovered a judgment against said company. This judgment was reversed by the Court of Civil Appeals in 1914, on the ground that the testimony was not sufficient to support the finding that the company was guilty of negligence in permitting the machine to be in a defective condition. 162 S. W. 980. A writ of error having been granted, the Commission of Appeals reached a conclusion contrary to that reached by the Court of Civil Appeals and, reversing its judgment, affirmed that of the trial court. 209 S. W. 389. Afterward, however, the Commission of Appeals set aside its judgment affirming the judgment of the trial court, and, because of error in the charge to the jury, in 1919 remanded the case to the court below for a new trial. 213 S. W. 930. This appeal is from that trial, which resulted in a judgment (rendered December 18, 1920) in appellee's favor against said company and against appellant Charles Gamer, who was made a party defendant by an amended petition filed by appellee November 17, 1920, following a suggestion by the attorney of the company as amicus curiæ made November 1, 1920, that it was legally dissolved in 1910. The grounds upon which said Charles Gamer

was made a party were stated in said amended petition as follows:

"Plaintiff further states that on the said 28th day of April, 1910, the said the Gamer Company, defendant, was duly dissolved, and on that day Charles Gamer, who resides in Fort Worth, Tarrant county, Tex., was, and ever since its incorporation had been, its principal stockholder and president, George Mumert, who resides in Fort Worth, Tarrant county, Tex., was a director and secretary thereof, and J. M. Bird was a director and acting treasurer, and all of whom, by the act of dissolution, became trustees of all its assets and properties, and liable for its debts and liabilities; that on the day of its dissolution it had and owned corporate assets, consisting of real and personal property, machinery, tools, and implements and choses in action of the value of, to wit, ·$150,000, and owed no debts; that the plaintiff's suit was then pending against the said Gamer Company, and it had answered therein, and on December 15, 1912, upon issues fully formed, both plaintiff and defendant the Gamer Company went to trial before a jury in this honorable court at the instance and under the direction of Charles Gamer, the president and trustee, who then and there had employed counsel to defend said cause and who did then and there continue defense of said cause, and continued the employment of counsel, to wit, Lassiter, Harrison & Rowland, and by defending said cause in the name of the corporation as provided he should do by statute made himself party defendant thereto, and party defendant to all of the issues involved therein, acting under the style and corporate name of the Gamer Company, and continued the defense of said action as trustee in said corporate name in this honorable court and in the Court of Civil Appeals in Fort Worth and Amarillo, and in the Supreme Court of Texas by his said attorneys, who represented him, but in the name of the Gamer Company, even down to November 1, 1920, when his attorneys filed a second amended original answer herein in the name of the said corporation 'the Gamer Company,' under and in which name he had defended said suit through all of the courts of the state ever since the dissolution of said corporation, and for 10 years while the same was pending in the appellate and Supreme Courts of the state, and all the time fraudulently concealing the fact of a dissolution from plaintiff and his attorney, and by reason of which he became a party defendant to this suit ever since the date of said trial, December 21, 1910.

"That by said dissolution of said corporation the said Charles Gamer, being president thereof and owning, to wit, $92,000 of its $100,000 capital stock, and by taking over all of its assets to his own use and benefit, became in law and equity its trustee, and he the said Gamer held the said property and assets in trust for the creditors and claim holders against the said corporation, and for their benefit as their claims and interest might appear and be established, and especially for the benefit of the plaintiff in the matter of his claim for damages for the personal injury sustained by him while in the employment of said corporation, as sued for herein; and neither the said Charles Gamer, the said Mumert, nor the said

Bird has ever disavowed or repudiated said trust with notice to plaintiff, and by reason of the premises the said Charles Gamer, George Mumert, and J. M. Bird became liable as such trustees, and said assets in their hands became burdened and incumbered with a lien to secure and satisfy plaintiff's claim when established by the judgment and decree of this honorable court; and, if it should be found by this honorable court that they or either of them have received said corporate assets or any part of them, and have disposed of them or converted them to their own use, or any part of them, then such trustee so appropriating the same or any part thereof is liable personally for the claim of plaintiff when so established by the judgment of this court to the amount or value of the assets of said corporation so received by him and used or appropriated to his own use, and of this he puts himself upon the county."

In his answer Charles Gamer excepted to appellee's said petition on the ground that it appeared from the allegations therein that if appellee ever had a cause of action against him, it was barred by the statute of limitations, and in a plea set up said statute as a defense against the recovery sought against him; and he adopted as his own allegations in an answer filed by the Gamer Company November 1, 1920, in which it denied that the cutting machine was defective as charged by appellee, denied that it owed appellee a duty to warn him of danger in using the machine, and alleged that appellee was guilty of contributory negligence as specified and assumed the risk of danger he incurred in operating the machine.

In a supplemental petition appellee pleaded as follows in avoidance of the bar of the statute of limitations set up by appellant Charles Gamer:

"Plaintiff further says that defendant Charles Gamer ought not to be heard to plead the statutes of limitation nor any of them against the claim of plaintiff against him, because he says that immediately after the dissolution of the Gamer Company, he, being president and trustee thereof, to wit, on the 15th day of December, 1912, appeared in this honorable court by his attorneys, Lassiter, Harrison & Rowland, and defended this case, and plaintiff on said trial recovered a judgment of $4,000 against the Gamer Company, and by his direction or assent he caused his said attorneys to file a supersedeas bond and appealed said cause, and ever since that date has been a party to the controversy resisting plaintiff's suit, and fraudulently concealed the dissolution of said corporation from plaintiff, and for this he is estopped from pleading said statute of limitation."

At the trial appellee dismissed this suit so far as it was against George Mumert and J. M. Bird.

Lassiter & Harrison, of Fort Worth, for appellants.

Sam. J. Hunter, of Fort Worth, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] We think the testimony warranted findings of the jury involved in their verdict: (1) That the Gamer Company was guilty of negligence in the respects submitted to them in the charge of the trial court; and (2) that appellee was not guilty of contributory negligence. We also think the testimony warranted the finding that appellee was damaged in the sum of $2,850. Therefore the third, fourth, fifth, seventh, and eighth assignments are overruled. So also is the sixth assignment, to wit, that the trial court erred when he refused to grant appellants a new trial on the ground that it appeared from the verdict that the jury failed to pass on the issue submitted to them as to whether appellee was guilty of contributory negligence or not. Unless the jury ignored the special charges with respect to that issue, numbered 3, 5, and 7, given at appellants' request, and it will not be assumed they did, they must have determined the issue in appellee's favor; otherwise they could not have found he was entitled to damages they awarded him.

[2] The contentions presented by other assignments are that the judgment (1) so far as it is against the Gamer Company is void because that company was legally dissolved April 28, 1910, and (2) so far as it was against Charles Gamer was unauthorized because it appeared that at the time he was made a party to the suit appellee's cause of action against him was barred by the statute of limitations.

In Corsicana Transit Co. v. Walton, 189 S. W. 307, this court dismissed the appeal of a corporation from a judgment rendered against it after it was dissolved in a suit brought against it a month before it was dissolved on the ground that "the necessary legal effect of the dissolution was to abate the suit"; and the Supreme Court, having granted a writ of error, approved the ruling. 222 S. W. 979. It does not appear directly from the opinion of this court or that of the Supreme Court whether in so holding consideration was given or not to a statute enacted in 1907 as follows:

"Upon the dissolution of any corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and to this end, and for this purpose they may, in the name of such corporation, sell, convey, and transfer all real and personal property belonging to such company,

collect all debts, compromise controversies, maintain or defend judicial proceedings, and to exercise the full power and authority of said company over such assets and properties; and the existence of every corporation may be continued for three years after its dissolution from whatever cause for the purpose of enabling those charged with the duty to settle up its affairs; and, in case a receiver is appointed * * * for this purpose, the existence of such corporation may be continued by the court so long as in its discretion it is necessary to suitably settle up the affairs of such corporation." Article 1206, Vernon's Statutes.

It would seem that the provisions in the statute authorizing the manager of a corporation, where a receiver has not been appointed, to "maintain or defend judicial proceedings" in its name, and declaring that the existence of the corporation "may be continued for three years after its dissolution" for the purpose of settling its affairs, called for a different holding in that case, unless the ruling made was justified by the fact that more than three years had elapsed between the time (July 7, 1913) when the corporation was formally dissolved and the time (October 19, 1916) when its appeal was dismissed. If that was the ground upon which the holding was based, and it should be assumed it was, as otherwise it was unwarranted, then the effect of the ruling was to construe the statute as meaning that the formal dissolution of a corporation becomes final and operative for all purposes at the expiration of three years from the time the formal dissolution occurs, and the corporation thereafter cannot further either maintain or defend a suit to which it was a party. It follows from such a construction of the statute that the Gamer Company's appeal in this case should be dismissed, for it long ago ceased to exist for any purpose whatever. Such a deposition of its appeal for the reason stated would be a sufficient answer to its contention, if it had a right to make it, that the judgment is void so far as it is against it.

[3] The contention of Charles Gamer that appellee's cause of action against him was barred by the statute of limitations of two years is predicated on the assumption that he was not a party to the suit until he was made one by appellee's amended petition filed November 17, 1920, which was more than 11 years after the injury to appellee, and more than 7 years after the Gamer Company ceased to exist for any purpose.

On the facts appearing in the record we think Charles Gamer should not be heard to make such a contention. From the time the Gamer Company was dissolved in 1910 to November 1, 1920, the defense of appellee's suit against it was carried on in its name and by the attorneys who represented it in the defense of the suit before it was dissolved. During that time the pleadings of the Gamer Company were amended, and the case was tried twice. Each trial resulted in a judgment in appellee's favor, and in each instance on an appeal prosecuted by the Gamer Company the judgment was reversed. During all that time appellee was ignorant of the fact that the Gamer Company had been dissolved, and nothing occurred to put him on inquiry to ascertain whether it had been dissolved or not. On the contrary, the continued defense of the suit in its name was in effect a persistent representation and assurance to him that the corporation had not been dissolved.

As the Gamer Company was nonexistent for any purpose after April 28, 1913, it is evident that the defense of the suit was not carried on by it after that date. It must therefore have been carried on by some one in its name. It appears that Charles Gamer, who owned practically all the stock of the company at the time it was formally dissolved in 1910, then purchased the interest of the other stockholders, took over the property of the company, worth about $190,000, and agreed to assume and pay its liabilities, amounting to about $80,000. He therefore was the only person interested in carrying on the defense of the suit, and the testimony in the record is amply sufficient to show that, to avoid the liability he incurred when he took over the property of the corporation, he defended the suit in his own interest, but in the company's name, from the time the corporation was formally dissolved in 1910. If, instead of pursuing that course, and so concealing from appellee the fact that the corporation had been dissolved, he had in his own name conducted the defense he made to the suit, or had otherwise disclosed the fact that the corporation had been dissolved, appellee could, and it should be assumed would, have taken the steps necessary to protect himself from the bar of the statute of limitations invoked by Charles Gamer when he was formally made a party to the suit in November, 1920. The consequence to appellee, therefore, if Charles Gamer should be heard to invoke the statute, would be to defeat the recovery appellee was justly entitled to, and in that way reward Charles Gamer for the wrong he did appellee in failing to promptly disclose to him the fact that the corporation had been dissolved, and that he had taken over all of its property and had assumed the payment of all its liabilities.

We think the rule stated in 25 Cyc. 1213:

"When a party against whom a cause of action exists in favor of another, by fraud or concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered or might have been discovered by the exercise of diligence"

—should be applied in the case, as it was by the Kentucky Court of Appeals in a case

(Droege v. Emery, 105 S. W. 374) like this one in many of its features. In that case the Droeges, officers and stockholders of the Licking Rolling Mill Company, a corporation, after its dissolution continued to carry on in its name the business it was engaged in before it was dissolved. While it was so carrying on the business, Emery, one of their employés, was injured. Being ignorant of the fact that the mill company had been dissolved, he sued it. The Droeges defended the suit in the name of the corporation, as Charles Gamer did this suit, and during the trial did not disclose the fact that the corporation was nonexistent. Emery, having recovered a judgment against the mill company, was seeking to enforce it by the sale of property, the legal title to which was in the company, but the equitable title to which the Droeges claimed was in them. They sought by injunction to prevent the sale of the property on the ground that the judgment was void because against a defunct corporation. It appeared that Emery was ignorant of the fact that the corporation had been dissolved until after the time when his right of action against the Droeges as individuals or partners was barred by the statute of limitations. In disposing of the contention of the Droeges the court said:

"They [the Droeges] contend that the judgment of appellee against the defunct corporation is void, and that the levy of the execution on their property, which they hold in the name of the corporation, was void, and their property should not be permitted to be sold by a court of equity. This as a general rule is correct; but appellants [the Droeges] by their conduct and acts do not occupy a position authorizing them to avail themselves of it. They in effect say to the court: 'We knew when our corporation became defunct, and without regard to its death have continued to carry on the business and operate the mill, transacting business and dealing with appellee and all persons as though it were a live corporation; and it is also true that we kept the fact of the death of our corporation concealed from appellee and the court, and consumed several days of its valuable time in defending the action of appellee against the corporation which we owned, managed, and controlled, and which we, in our answer to appellee's petition, admitted was a live corporation.' Yet they say, notwithstanding these facts, the rolling mill property, their property, cannot or should not be sold to satisfy appellee's judgment. The statement of the proposition is a sufficient answer to it. Their conduct in continuing the operation of the mill as a corporation, their admission that it was a corporation, and their defense of the action, * * * completely estops them from being granted the relief sought in this action."

The appeal of the Gamer Company is dismissed. The judgment, so far as it is against Charles Gamer, is affirmed.