*592 OPINION.
Disnex :
1. The record indicates that prior to 1927 the prospect of realizing something on the claim for damages filed with the Mexican Government was not hopeless or without reason. Not until in that year did prosecution of said claim and all operations of the Buena Fe Mining Co. cease. Not until then did the company stop paying taxes on its Mexican property and abandon it. Then and not till then did its stock become worthless.
It is shown by the agreed stipulation that prior to May 26, 1912, the date when insurrectos damaged properties of Buena Fe M-miug Co., John H. Kirby had loaned and advanced to the company sums *593 aggregating at that date in ■ excess of repayments the sum of $'77,447.63 and that net advances made by Kirby to the company after May 26, 1912, to and including December 22, 1926, amounted to the sum of 69,737.11, making total net advances of $147,184.74. This amount Kirby charged off in 1927 as a bad or worthless debt and the respondent in determining petitioner’s taxable income for 1927 disallowed any deduction for the account so charged off.
In the light of the record herein, we are of the opinion and hold that John H. Kirby was justified in charging off as a bad debt in 1927 said sum of $147,184.74 and the respondent in determining petitioner’s taxable income for 1927 erred in not allowing as a deduction one-half of that amount.
It is agreed and stipulated that prior to May 26, 1912, John H. Kirby had loaned and advanced to the Kirby Development Co. sums aggregating at that date' a net balance of $18,166.23 and thereafter, to and including March 14, 1927, made additional advances amounting to $436.44, or a total at March 14, 1927, of $18,602.67, which amount Kirby charged off in 1927 as a bad debt or account.
In determining petitioner’s taxable income for 1927, the respondent disallowed any deduction for said account, and in our opinion, and we so hold, he did not commit any error.
The evidence relative to the property in Mexico of the Kirby Development Co. is not the same as that concerning the Buena Fe Mining Co. What damage, if any, was done its property by Mexican insurrectos on May 26, 1912, or any other time is not alleged nor shown. Its property is not shown to have been abandoned or become of little or no value, nor its stock to have become worthless in 1927, and the evidence as presented in the record does not warrant a charge-off as a worthless account or debt of the $18,602.67 as such. The respondent is sustained as to the Kirby Development Co. stock.
The agreed stipulation shows that the Buena Fe Mining Co. stock involved was acquired prior to May 26, 1912, by John H. Kirby at a cost of $82,393.30 and that the Kirby Development Co. stock was also acquired by Kirby prior to that date and at a cost of $25,000, and that both stocks were at all times material in this proceeding community property of petitioner and her husband, John H. Kirby.
As above indicated, the record shows that the stock of the Buena Fe Mining Co. became worthless in 1927, but fails, in our opinion, to show that the stock of the Kirby Development Co. also became worthless in that year. We, therefore, hold that the petitioner, in her 1927 income tax return, is entitled tó a deduction of one-half the cost of the Buena Fe Mining Co. stock, but that in her 1927 income tax return she is not entitled to any deduction on account of the cost of the Kirby Development Co. stock, the record not showing that it became worthless in 1927.
*594 2. The Southern Tariff Association was a voluntary association, the purposes and efforts of which are duly set forth in our findings of fact.
The advances made to the association by John H, Kirby and disallowed as deductions by the respondent were made without promise of repayment and with knowledge on his. part of the financial condition of the association. No evidence indicates that he was requested by the association to advance or loan money or pay expenses, except that the advances by payment of bills in 1928 were at the request of officers of the association. The association never authorized the procurement of loans from him. We can discern no obligation to repay in these transactions. Therefore, they are not deductible as bad debts. J. S. Cullinan, 19 B. T. A. 930. They partake of the nature of contributions or donations rather than of debt. The amounts claimed included unnamed amounts of voluntary contributions by Kirby. Viewed as contributions, the amounts are not within any statutory classification of allowable deductions.
The activities of the association were for the purpose of procuring the repeal of a statute of the United States and contributions for such a purpose are not allowable as deductions from gross income. Mrs. William P. Kyne, 35 B. T. A. 202; Adler Co., 10 B. T. A. 849; Sunset Scavenger Co. v. Helvering, 84 Fed. (2d) 453. We therefore conclude and hold that, whether regarded as advances or as contributions, the amounts in question are not deductible.
3. Whether the petitioner realized a taxable gain in each of the years 1927,1928, and 1929 as a result of sales in those years of bonds of the Kirby Lumber Co., is submitted for our determination on facts which have been stipulated and are set out in our findings of fact.
It is shown that the Kirby Lumber Co.’s preferred stock had a March 1, 1913, value of not less than $100 per share (exclusive of unpaid dividends and premium) which was its cost to Kirby when acquired by him prior to 1913.
The accumulated unpaid dividends in 1923 of $126 a share plus a $5 per share premium aggregated $6,550,000, and the undistributed earnings accumulated since February 28, 1913, aggregated only $2,064,373.54, or the equivalent of a dividend of $41.28 a share, and in their returns for 1923 John H. Kirby and petitioner included as taxable dividends $41.28 of each $231 (face value) of bonds received by Kirby in exchange for preferred stock, dividends, and premiums thereon. The retirement of the preferred stock and receipt of bonds therefor in 1923, as stated, were pursuant to a plan adopted by the stockholders and directors of the Kirby Lumber Co. The payment of the dividend of $126 per share had been duly ordered and authorized by the directors of the company.
*595 The respondent in his deficiency notice determined that the value of the bonds in question in 1923 was 83 percent of par and that on such basis a profit, rather than a loss, resulted from the sale of said bonds in each of the years in issue. But in our opinion, and we so hold, this exchange of stock for bonds was an exchange, to the extent that the bonds at face value were received to balance the par value of the preferred stock, in a recapitalization and therefore a reorganization, in which neither gain nor loss was recognized, within the provisions of the Revenue Act of 1926, section 203 (b) (2)[1] (and section 112 (b) (3) of the 1928 Act, identical therewith), and section 203 (h) (1) (C), Act of 1926[2] (identical with section 112 (i) (1) (C) of the 1928 Act). Clearly, the Kirby Lumber Co. was a party to a reorganization under section 203 (h) (2), Act of 1926,[3] and section 112 (i) (2) of the 1928 Act. In this connection, see 375 Park Avenue Corporation, 23 B. T. A. 969; H. E. Muchnic, Administrator, 29 B. T. A. 163; Walter F. Haass, 29 B. T. A. 900; affirmed by mandate, January 14, 1936 (not reported) ; H. Y. McCord, 31 B. T. A. 342. Therefore, as to each $100 face value of bonds (of each $231) the basis to be used is “the same as in the case of the property exchanged * * Section 204 (a) (6), Act of 1926 [4] (identical with section 113 (a) (6), Act of 1928). The parties have stipulated that the basis of the property exchanged, namely, the preferred stock, was $100 per share.
*596 Regarding each $126 face value of bonds (of each $231) the basis to be used is “cost.” Sec. 204 (a), Act of 1926, and sec. 113 (a), Act of 1928. That portion of the bonds that was acquired by petitioner and her husband as payment for the dividends declared does not come within any of the exceptions mentioned in section .204 (a) and 113 (a), respectively. What was this cost? The cost, in our opinion, was the fair market value of each $126 (of each $231) of face value of bonds when received in 1923 in payment of the dividends declared on the preferred stock. Cf. United States v. Fuller, 42 Fed. (2d) 471. The petitioner having offered no evidence of such fair market value, none being stipulated, and respondent having determined that all of the bonds had a fair market value of 83 percent of par, we hold that such was their fair market value and therefore that the $126 face value of bonds had a fair market value in 1923, and a basis herein, of $104.58.
Kirby received, however, $231 face value of bonds in connection with each share of preferred stock, $5 face value of bonds being added because of the right to premium. As to this $5 worth' of bonds, it can not.be said that there was any basis, in cost or otherwise, aside from the basis of the stock. The original investment of $100 in the stock was the consideration not only for the stock itself, but, as shown by the contract embodied in the stock certificate, was consideration for the right to receive a $5 premium. Therefore, when in 1923 Kirby received, in addition to $100 in bonds for the stock certificate, $5 in bonds for the premium right, it is apparent, and we hold, that the cost of stock is also the cost of the premium right, that is, that the $100 cost basis is the basis for $105 face value of bonds. Therefore each $231 worth of bonds has a basis of $204.58, being $100 for stock and premium right, and $104.58 value of right to dividend. This applies equally to all of the bonds acquired by Kirby and sold in 1927, 1928, and 1929; and, all the bonds being upon the same basis, there is no distinction to be made between the sales in the different years. We hold that the basis of the Kirby Lumber Co. bonds sold in each of the taxable years is 204.58/231 of face value, and should be. so computed. This fraction reduced to a decimal is .885627705, and we determine gain computed as follows:
[[Image here]]
4. The question for our determination under this issue is entirely one of fact. We are of the opinion and hold that the average fair *597 market value per acre of the aforesaid two tracts of land, 218.04 acres and 193.53 acres, at March 1, 1913, was $350 per acre and the profit, arising from their sale in 1929 and from the sale of the three small tracts — the cost of which is stated in our findings of fact — to the Curtis Airport Corporation, all for the sum of $546,600, should be recomputed on the bases of values herein found or stipulated.
5. In view of the facts disclosed by the record with respect to this issue, we are of the opinion and hold that the respondent did not err in disallowing the deduction claimed by petitioner. While the record shows that the $25,000 T. H. Bass note, and the 250,000 shares of the capital stock of the Texas-Arizona Copper Co. as security were worthless in 1929 when Bass died, leaving no assets, it does not show that both the note and security became worthless only in 1929 and that it was not until then that Kirby so knew. The provisions in the note relative to action that might be taken by Kirby in the event Bass defaulted in the payment of the note when due; the date of the note, November 21, .1917; and the fact that no effort is shown to have been made to collect note or any interest thereon or to sell the security, stock attached as collateral, although even prior to 1928 Bass’ financial condition was “up and down”, considered in connection with entire record, convince us that the note and stock were worthless and so considered by Kirby prior to 1929, though not charged off until then.
6. The petitioner contends that the capital stock of the Braeswood Corporation became worthless in 1929 and that she is entitled to a deduction in the determination of her taxable income for that year on account thereof. In her income tax return for 1929 petitioner claimed one-half of a 95 percent loss on said stock, which respondent disallowed.
The record shows that there were mortgages on the property of the Braeswood Corporation at the time it was purchased and that thereafter, though at what dates it is not shown, some were foreclosed and satisfied. It is shown that there was also some unsecured indebtedness against the corporation in 1929. What was the amount of the secured and unsecured indebtedness and what the value of the assets of the corporation either before or after the foreclosure and satisfaction of some of the mortgages are not shown. The record does not disclose when the corporation went into liquidation and was formally dissolved, though such had taken place at the time of the hearing herein in 1935. In our opinion, and we so hold, the competent evidence adduced is not sufficient for us to determine that the stock of the Braeswood Corporation became worthless; fails to establish that it became absolutely worthless in 1929 as contended by petitioner. Therefore, we determine this issue in favor of the respondent.
*598 7. On this issue — whether or not the stock of Vancouver Lumber Co. held by John H. Kirby on a cost basis of $184,904.19 became worthless in 1929 and was disposed of by a bona fide sale for $10 in that year — we are of the opinion and hold 'that the evidence establishes that' said stock became worthless in 1929 and the sale of the same for $10 was a bona fide sale, the loss on the stock being the difference between cost and the $10 for which sold as contended by petitioner. Therefore, this issue is determined in favor of the petitioner.
8. That stock of Link Oil Corporation, costing John H. Kirby $67,900, was disposed of by bona fide sale for $500, thereby causing him and petitioner a loss of $67,400, is, in our opinion, established by the evidence. We determine this issue in favor of the petitioner.
9. The charter of the Texas Banking & Investment Co. expired by lapse of time on February 1,1925, and its assets on that date consisted largely of capital stock of other corporations. At that time John H. Kirby was one of the directors of the company and under the law became one of the trustees in liquidation. No receiver was ever appointed.
The Kevised Statutes of Texas in force in 1925 (see' articles 1205 and 1206, Kevised Statutes of Texas, 1911, as amended, and articles 1387-1391, Kevised Statutes of Texas, 1925) provide, in part, that a corporation is dissolved by expiration of the time limited in its charter; that upon the dissolution, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders, with power to settle the affairs, collect debts, and divide the moneys and other property among the stockholders after paying the ’ debts; that the existence of every corporation may be continued for three years after its dissolution from whatever cause, for the purpose of enabling those charged with the duty to settle up its affairs; that, in case a receiver is appointed by the court, the existence of the corporation may be continued so long as may be necessary to settle suitably the affairs of the corporation; that, when no receiver has been appointed for said corporation, suit may be instituted on any claim against the corporation as though the same were not dissolved and judgment may be rendered accordingly, the assets of the corporation being liable for its payment.
The record shows that Mrs. Zelie L. Willson claimed to be the beneficial owner of all the outstanding shares of capital stock of the Texas Banking & Investment Co. and that on or about June 6, 1927, she disposed of the same and all interest she had in the assets of that company to John H. Kirby upon the terms and conditions set out in our findings of fact.
*599 In behalf of the respondent it is contended that the Texas Banking & Investment Co. ceased to be a going corporation on February 1, 1925, on account of the expiration of its charter; that, under the express terms of the Texas statutes, the legal entity of the corporation in process of dissolution was continued for the purpose of distributing its assets among creditors and stockholders and for purposes of suit (citing Waggoner v. Edwards, 68 S. W. (2d) 655), and that the trustees should have concluded the liquidation on or before February 1, 1928, asserted to be the basic date for determination of gain or loss in the liquidation.
Briefly stated, it is insisted for respondent that John H. Kirby, on February 1, 1928 — three years after the expiration of the charter of the Texas Banking & Investment Co. — constructively received the assets then remaining in the hands of the liquidating trustees, which assets consisted of cash and shares of corporate stock, the value of such stock, with one exception, being stipulated.
In petitioner’s behalf said insistence is denied. The record shows that the liquidating assets of the Texas Banking & Investment Co. (involved in the litigation hereafter mentioned) prior to 1929 were not actually reduced to possession of John H. Kirby nor set apart for him without substantial limitation or restriction as to’time or manner of payment or use or enjoyment by him. The assets in question were, until well into 1929, in the control of the liquidating trustees, subject to restrictions on their handling, resulting from various claims and lawsuits instituted by various persons and in-junctive writs issued in connection therewith. By stipulation it is shown that as late as February 1929 there were in effect injunctions restraining transfer of any of the Gladys City Oil, Gas & Manufacturing Co. stock or partition of its assets involved in said litigation. The adverse claims of Carroll, Gaddy, Collier, Gray, and others and the suits instituted by them to enforce their claims, as set forth in stipulations, negative receipt, either actual or constructive, of said assets (except as hereinafter indicated) by John H. Kirby prior to 1929. See Revenue Act of 1928, Regulations 74, arts. 332, 333; Grass Creek Oil & Gas Co. v. M. S. Reynolds, —- Fed. Supp. - (U. S. Dist. Ct., Wyoming, Sept. 13, 1933); cf. C. H. Mead Coal Co., 31 B. T. A. 190, and authorities therein cited.
Although in Gamer v. Gamage, 241 S. W. 736, 738, 739, it was held that after the lapse of three years from the date of dissolution of the corporation suits by or against the corporation could no longer be maintained, such ruling does not, in our opinion, cover or apply to the prosecution or defense by the liquidating trustees of suits based on claims by or against the corporation or its assets in *600 tbe circumstances shown herein, for in Burkburnett Refining Co. v. Ilseng, 292 S. W. 179, it was said:
In Texas, our courts have long adhered to the doctrine that the assets of a dissolved corporation will be protected in equity as a trust fund for creditors and stockholders. In 1907 our Legislature began the enactment of remedial statutes. In 1919 other articles were added. As we construe our statutes, the Legislature has given to creditors and stockholders of a dissolved corporation the same broad measure of relief which equity would have afforded in the absence of legislation. Article 1888, without any time limitation, authorizes these trustees to defend and maintain suits and generally settle up the affairs of the dissolved corporation. Under this article the assets pass into the hands of these trustees, and they are charged with definite duties and responsibilities. This very article authorizes the substitution of these trustees as parties plaintiff in the further prosecution of the case at bar.
Article 1389 is merely cumulative of article 1388. It but provides that, as an aid to the trustees in performing their duties as prescribed in article 1388, the corporation itself, for limited purposes only, may continue for three years, and even longer, under a receivership, if the court thinks it necessary. But, even if such continuance of the corporation itself for limited purposes is not had at the option of the trustees, they still have the right, and are charged with the duty, of defending and maintaining suits in the protection of the assets of the corporation.
The right of the trustees to carry on the litigation after the lapse of three years, affirmed by the Texas Commission of Appeals, was adopted by the Supreme Court of the state, as the above citation shows.
We conclude and hold that John H. Kirby did not constructively receive the assets of the Texas Banking & Investment Co. at the end of three years from the expiration of its charter, but at the time of actual receipt of the properties and moneys distributed. Edward S. Harkness, 31 B. T. A. 1100; Mrs. Grant Smith, 26 B. T. A. 1178; Harry A. Dockum, 11 B. T. A. 39; Wells Fargo Bank & Union Trust Co. v. Blair, 26 Fed. (2d) 532. We hold that, with the exception of the $400,000 distributed on October 1, 1928, he received said assets after February 1, 1929; we hold further that all of said assets, including dividends, wrere received by him as liquidating dividends, ■and not as ordinary dividends, for they were all received through the liquidating trustees and, although the Gladys City Oil, Gas & Manufacturing Co. dividends were ordinary dividends so far as distribution by it was concerned, nevertheless they were paid to the liquidating trustees of the Texas Banking & Investment Co., who distributed same by way of liquidation. Therefore when received by John H. Kirby, these were liquidating dividends. He was as-signee of the rights of Mrs. Willson and all of her rights and assumed her status. She would, if she had not assigned to Kirby, have received these liquidating dividends, and whether Kirby be considered a stockholder or no, we conclude that he, with her status, *601 received these assets by way of liquidation dividends, and in exchange therefor, under section 115 (c) of the 1928 Act.[5] The valuations which we have above found determine the amount of the liquidation dividends received by Kirby. We reject.petitioner’s contention that the contractual arrangement between Kirby and Mrs. Willson affects the value of the assets distributed in liquidation, for manifestly such contract goes only to the cost of the assets, to Kirby, and does not affect the value of the liquidation distribution. The liquidating trustees were not parties to the contract between Mrs. Willson and Kirby. It was their duty to distribute the assets of the Texas Banting & Investment Co. to those entitled thereto — primarily the stockholders, but, after Kirby’s acquisition of the stock, to him as as-signee of the rights of the former stockholders. This distribution the trustees made. What the acquisition of the rights of such assignee cost him was of no interest to the distribution trustees, but was of interest only to the assignee, Kirby, by way of proper basis to be set up with reference to the taxation of the liquidation distribution. We therefore hold that the total basis to petitioner, in the taxable years here in issue, as to the amounts received as liquidating dividends is the cost to Kirby of the assignment from Mrs. Willson, to wit, $883,025, which is the total of $100,000 down payment in cash and notes from Kirby to Mrs. Willson, and $211,275 later paid her by Kirby, pursuant to contract, from the dividends paid by the Gladys City Oil, Gas & Manufacturing Co., together with $71,750 paid to the other parties shown by the record to have been claiming interests in the Texas Banking & Investment Co. stock, for assignments from them. These amounts, of course, are to be divided, as affecting petitioner’s interest. This liquidation distribution was received partly in 1928 ($400,000 received October 1, 1928) and the balance in 1929. We hold this to be taxable in 1928 to the extent that it exceeds the entire basis in the taxable years, which basis, as above seen, is $383,025, and the balance to be taxable in 1929. Any further payments to Mrs. Willson from receipts in years later than the taxable years here involved from the oil and gas production designated by the contract between her and Kirby are so contingent upon the possibility of oil and gas production, and upon the length of life of Mrs. Willson, that we hold that they had no market value during the taxable years here involved, and were not shown to have such value. Therefore such future payments can not properly be set up as a part of the basis for the taxable years herein involved.
We consider and hold that Kirby was not a mere trustee or agent for Mrs. Willson as to one-fourth of the total dividends paid by *602 the Gladys City Oil, Gas & Manufacturing Co., and did not receive any money for her benefit, and therefore hold that the amounts received by him were income. The obligation to pay Mrs. Willson was personal. She did not retain any lien or interest in the dividends themselves', nor did she warrant the title to them. Kirby was owner of the dividends by assignment from her. She reserved no one-fourth interest therein. Moreover, the consideration to be paid by Kirby for Mrs. Willson’s rights was not to be abated or reduced in consequence of any judgment obtained against the Texas Banking & Investment Co. The payments to her were merely a part of a purchase, enforceable as a personal obligation. Kirby was not a mere conduit for the passing of the dividends to Mrs. Willson. He was to pay her, not the dividends themselves, but “amounts equal to one-fourth (%) of the total dividends.” The difference is important, and, considering the desire,, of Mrs. Willson that the payment not be abated or reduced in consequence of any judgment obtained, this difference between dividends and amounts equal to dividends appears to have been an intentional one. We find in these circumstances neither mere agency nor trusteeship.
We conclude and hold, therefore, that petitioner’s gain should be computed on the basis of values as heretofore herein determined, or stipulated, subject to the mutual concessions made by the parties in the stipulations, and subject also to the provision that the same gain on liquidation of the Texas Banking & Investment Co. should not be taxed twice, but only in the particular year in which actually received as shown by the findings of fact and stipulations, after allowing for proper basis as above indicated.

Decision will be entered under Rule 50.

 Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall he recognized, except as hereinafter provided in this section.
* * * * * *
(b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
*******

(h) As used in this section and sections 201 and 204—
(1) the term “reorganization” means * * * (C) a recapitalization, * * *

 (2) The term “a party to a reorganization” includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

 Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—
* * * * * * *
(6) If the property was acquired upon an exchange described in subdivision (b), (d), (e), or (f) of section 203, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by paragraph (1), (2), (3), or (4) of subdivision (b) of section 203 to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value' at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.

 Sec. 115. (c) Distributions in liquidation. — Amounts distributed in complete liquidation of a corporation shall be treated as in full payment .in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *