### In re NATIONAL FOOD PRODUCTS CORPORATION.

No. 8928.

District Court, D. Maryland.

June 30, 1938.

J. Martin McDonough and Piper, Carey & Hall, all of Baltimore, Md., for debtor.

Joseph France and Venable, Baetjer & Howard, all of Baltimore, Md., Ropes, Gray, Boyden & Perkins, F. W. Crocker, and T. W. Monroe, all of Boston, Mass., and Joseph France (of Venable, Baetjer & Howard), of Baltimore, Md., for Bondholders' Protective Committee.

Edward N. Rich, of Baltimore, Md., for certain bondholders.

Harry J. Green and Weinberg, Sweeten & Green, all of Baltimore, Md., for Protective Committee for holders of Class A Stock.

Raymond L. Wise, of New York City, for Protective Committee for holders of Class B Stock.

John L. Westmoreland, of Atlanta, Ga., for certain stockholders.

CHESNUT, District Judge.

The National Food Products Corporation was incorporated under the laws of Maryland in 1925. It filed proceedings in this court on December 1, 1937 for corporate reorganization under the Bankruptcy Act, § 77B, 11 U.S.C.A. § 207. After the customary incidental preliminary procedure it filed its plan of reorganization on April 4, 1938. Pursuant to notice duly given a hearing on the proposed confirmation of the plan was held on June 20, 1938.

The debtor is a holding company whose assets consist almost entirely of shares of stock of certain subsidiary corporations engaged in the chain grocery store business in various States. The capitalization of the Company at the present time is as follows:

1. Fifteen-year collateral trust 6% convertible gold bonds, Series A, principal amount $2,088,000.00
 Accrued interest thereon to May 1, 1938 125,280.00

 $2,213,280.00
2. 3% gold coupon notes in the principal amount of 130,700.00
3. Unsecured general creditors 926.84
4. Class A Stock, original issue 75,000 shares, the accrued and accumulated dividends as of December 1, 1937 amounting to $19.48 per share.

5. Class A Stock, Series of 1932, 34,288 shares, accrued and accumulated dividends thereon as of December 1, 1937, amounting to $12.50 per share.
6. Class B Stock, 337,815.48 shares.
7. Warrants entitling holders thereof to purchase 352,625 shares of Class B Stock.

The claims of creditors and stockholders have heretofore been classified for voting purposes, in relation to the acceptance of the plan, as above enumerated. The principal features of the plan of reorganization are as follows:

A. The claims of unsecured general creditors in the amount of $926.84 are to be paid in full in cash.

B. Claims, if any, of the United States of America will not be affected by the plan.

C. The new company (whether the present corporation recapitalized or a new corporation with new capitalization) will authorize a new Class A Stock of the par value of $20 per share in the amount of 65,000 shares, and a new Class B Stock of the par value of $1.00 per share in the amount of 65,000 shares, practically all of which will be distributed to present security holders as hereinafter stated. The new company will therefore have no funded obligations and no fixed interest charges as there will be no bonds issued by the new company.

There has been a default for some time past in the payment of interest due on the bonds and notes of the Company. The bonds are secured by deposit with a trustee of the stocks of the subsidiary companies. For some years after the formation of the Company the dividends from these stocks were adequate to meet fixed charges, but, according to the testimony at the hearing, by reason of recent new legislation, both federal and state, and the general economic conditions for some time past, the dividends on the stocks of the subsidiary chain grocery store companies have been insufficient to meet fixed charges; and the company's bonds have been selling on the market at from 15% to 20% of par. It is believed that the reorganization of the company will much improve the market value of the present bonds and notes, and also of the Class A Stock when converted into the new securities in accordance with the plan.

The principal assets of the Company (now all pledged as security for its debenture bonds) consist of (1) 60,000 shares of Class A Stock and 51,000 shares of

Common Stock of Southern Grocery Stores, Inc.; (2) 42,380 shares Class B Stock of David Pender Grocery Co.; (3) 21,500 shares of Common Stock of H. C. Bohack Co., Inc. At the present time the income of the debtor corporation is almost exclusively from the stock of the Southern Grocery Stores, Inc. The debtor owns all of the Class A Stock and 51,000 shares out of 56,288 shares of Common Stock of that Company.

The plan of reorganization provides for the following distribution of the new securities.

1. For each $1,000 par value of the convertible 6% gold bonds there will be issued (a) 25 shares of "preferred and participating stock" of the *Southern Grocery Stores, Inc.,* of the par value of $20 each ($500 aggregate par value for $1,000 bond) the aggregate par value to be issued to bondholders to be $1,044,000; (b) a voting trust certificate representing 28 shares of Class A Stock of the new Company; par value $20 each ($560 aggregate par value $1,000 bond); aggregate par value to be issued to bondholders $1,169,280; (c) coupons payable prior to November 1, 1937, not heretofore paid will be paid in cash upon presentation.

The holders of 3% gold coupon notes in the principal amount of $130,700 will receive for each $100 note a voting trust certificate representing 5 shares of Class A Stock of the new company of the par value of $20 each, aggregate par value to be issued to such note holders $130,700. The holders of coupons thereon payable prior to May 1, 1938, not heretofore presented for payment, will be paid upon presentation.

2. Class A Stockholders of the present company of the original issue of 75,000 shares will receive in exchange for their stock, for each *3* shares thereof, *2* shares of Class B Stock of the new company of the par value of $1.00 per share. Class A Stock, Series of 1932, will receive in exchange for each *3* shares *1.3* shares of Class B Stock of the new company.

3. There will be no distribution of any of the new securities to the holders of any of the present Class B Stock of the debtor, or to the holders of any of the warrants now outstanding heretofore mentioned. The reason therefor is that this Class B Stock and the warrants have no value.

At the hearing evidence was submitted without contradiction that the present security holders had accepted the plan in following percentage amounts:

78% of the 6% bonds; 73% of the 3% coupon notes; 59% of the present Class A Stock; and 80% of the Class A Stock issued in 1932. No acceptances have been solicited or received from holders of the present Class B Stock or the warrants. None of the present security holders have filed definite objection to the plan, but, as will be hereinafter mentioned, some of the security holders of each class have urged amendments of the plan in certain particulars.

The most important feature of the testimony taken with regard to the plan has relation to the question as to whether there is any equity in the present assets of the debtor available for its present Class B Stock. On this issue the testimony is that the present aggregate value of the assets of the debtor is $2,475,958. This represents a careful and detailed appraisal made as of March 31, 1938, by the American Appraisal Company. The stocks of the several subsidiary corporations owned by the debtor and their respective valuations are given as follows:

| | | |
|---|---|---|
| Southern Grocery Stores, Inc., Class A, 60,000 shares | $1,324,500.00 | |
| Common Stock, 51,000 shares | 702,645.31 | |
| David Pender Co., 43,380 shares of common valued at | 413,663.31 | |
| H. C. Bohack, Inc., 21,500 shares of common valued at the market at | 32,000.00 | |
| Other miscellaneous securities, present net value | 3,150.00 | |
| Total value of assets | | $2,475,958.62 |

| | | |
|---|---|---|
| The *liabilities* of the debtor are as follows: | | |
| 6% Bonds with interest computed to 3/31/38 | $2,202,840.00 | |
| 3% gold coupon notes principal with interest to same date | 134,294.25 | |
| Unsecured general claims as of 12/1/37 | 926.84 | 2,238,061.09 |
| The present Class A Stock is prior to Class B on liquidation. Class A original issue is 75,000 shares entitled to $35. principal in liquidation | | 2,625,000.00 |
| Plus accrued dividends $2.50 per share per annum to 3/31/38 | | 1,523,400.00 |
| Class A Series of 1932, 34,288 shares entitled to $35. per share in liquidation | | 1,200,080.00 |
| Plus accrued dividends of $2.50 per share per annum to 3/31/38 | | 437,127.62 |
| Total debt and stock on liquidation entitled to priority over Class B stock equals | | $8,143,668.71 |

As the total assets of the Company are valued at $2,475,948, and on liquidation the debts and stock priorities that would have to be paid in preference to Class B Stock amount to $8,143,668.71, it is apparent that there is a deficit of over $5,000,000, with respect to Class B Stock, and obviously no equity in the assets of the debtor for it.

There is practically no contradiction in the testimony as to these valuations. There was some contention by some of the present Class A stockholders that the appraisal of the present value of the Class A Stock and the estimate of the equity in the assets available therefor was perhaps too low; but the greater valuation contended for was not in excess of $1,000,000, so that there was really no controversy over the fact that the present Class B Stock has no value. *And I so find as a fact in the case.* In this connection it should be borne in mind that the alternative to a successful reorganization is foreclosure by the bondholders with a sale of the present assets, which in all probability would result in wiping out even the small apparent presently available equity for the present Class A Stock.

I turn now to the several suggestions for changes in or amendments of the plan in detail.

1. Mr. Edward N. Rich, counsel for holders of about $50,000 par value of the bonds, urges an amendment of the provision of the plan with respect to dividends on the new "preferred and participating stock" of the Southern Grocery Co., Inc., which is to be substituted by proper corporate proceedings of that Company for its present Class A Stock, and distributed to present bondholders of the debtor as above mentioned. Reference is made to the provision for such dividends that appears on printed page 8 of the plan. It is there provided that this new preferred and participating stock shall be entitled to a dividend of $1.20 per share per annum in preference to dividends on the common stock of the Southern Grocery Co., Inc., and that such dividends shall be accumulative and accrue from May 1, 1938. It is then provided: "If earnings legally available for dividends on the Common Stock in any fiscal year exceed $30,000, then the Preferred and Participating stock shall, as a class, be entitled to additional dividends in an amount equal to 25% of such earnings in excess of $30,000." Mr. Rich's suggestion is that in lieu of this last quoted provision,

75% of such excess earnings over $30,000 should be set aside as a *sinking fund* for the retirement of the new preferred and participating stock by purchase or call at a price not in excess of its redemption value. The point made is obviously for greater protection of the principal of the investment in the new preferred and participating stock at the expense of additional dividends thereon. It would also have the advantage of providing or strengthening a market for the stock. The change is, however, opposed by the bondholders committee representing a large amount of the bonds, and obviously could not be made without a re-reference of the plan to those who have heretofore accepted it. Counsel for the Committee also points out that in their view it is financially preferable to have the excess earnings applicable to the Southern Grocery Company's common stock paid to the new company, and thus increase the amount of net earnings of the new company applicable to a sinking fund for the retirement of the new Class A Stock of the debtor as provided for in Article IV, printed page 6 of the plan. Their financial judgment is that the new Class A Stock of the debtor should be entitled to the greater protection as to principal in preference to the new preferred and participating stock of the Southern Grocery Company. Mr. Rich's suggestion from the financial standpoint is not without some force, but on consideration it seems to me to be only a detail in the whole plan not going to its fundamental fairness or equity; and as it could not be adopted against opposition without re-submission of the plan, I have concluded that it should be rejected. Mr. Rich has also suggested that the contemplated dividend on the present stock of the Southern Grocery Company held by the debtor, to be used for the expenses of reorganization, should be eliminated, and a loan required to be made by the Southern Grocery Company to the debtor for that purpose, or at least that the amount of the dividend so expected to be declared for expenses shall be limited. This suggestion is also not without merit but I think the objective in this respect will be accomplished substantially by the requirement of approval of expenses of the reorganization by the court.

Mr. Westmoreland of Atlanta, representing 3700 shares of the present Class A Stock and 37,000 shares of the present Class B Stock, has submitted the view that

on the whole the plan is not sufficiently generous or quite fair to the present Class A stockholders. He points out that this had a market value at some time in 1937 of $2.50 per share although it was valued in November 1936 at least by one of the stockholders at 50¢ per share; and that in the reorganization it gets what is equivalent to only 66⅔¢ per share in the new B Stock of the debtor. This view is however not shared by the stockholders' committee for the present Class A Stock who have approved the plan and feel that it is fair and equitable with respect to their interests. As such a very large proportion of the present Class A stockholders regard the plan as fair and equitable in their interests, and as the plan has evidently received lengthy and careful consideration in its formulation, I do not feel that the point made by Mr. Westmoreland is sufficiently substantial to warrant a rejection of the plan, in view of the present financial condition of the Company; and indeed I do not understand his position to be that of a definite rejection of the plan.

The more important objection to the present plan, or rather proposed amendment, is made by a committee of holders of present Class B Stock of the debtor of which Mr. Bertram Sidel is chairman. Their counsel, Mr. Raymond L. Wise of New York, proposed as an amendment to the plan that "the holders of 337,815.48 Class B stock in exchange for each 10 shares of Class B stock, shall receive one warrant entitling the holder thereof to purchase one share of the new Class B stock at a price of $10 per share. This warrant shall be good for seven years from the date of confirmation of the plan for reorganization". To give effect to this the plan would have to be amended so that 100,000 shares instead of 65,000 shares of the new Class B Stock, $1.00 per share, would be authorized; and that Class B warrants in the amount of 33,782 would be issued by the debtor. As the new Class B Stock will have a par value of only $1.00 per share, and the present actual value is estimated not to be in excess thereof, the request for some recognition of the present Class B stockholders on the basis suggested is a seemingly moderate request. It is not contended on behalf of these excluded present Class B stockholders that the warrants would have any present value, but the hope is entertained that in seven years possibly new prosperity of the debtor far beyond any presently prospective probability would give some value to such warrants. It is particularly not contended by these stockholders that there is any present equity in the assets of the debtor available for its present Class B Stock. The amendment suggested is opposed by the bondholders and also by the present Class A stockholders. It is true the interests of the bondholders would not seem to be importantly affected by the proposed amendment, but they point out that the issuance of the warrants would entail some substantial additional expense on the debtor and would result in an issuance of a large amount of presently perfectly worthless paper securities, and would also to some extent impair the symmetry of the new financial statement of the debtor and tend to some extent at least to impair the attractiveness of the new Class B Stock. The debtor itself likewise opposes the amendment for similar reasons. The Class A stockholders committee does not oppose the amendment if making it would not require re-submission to the security holders, but does oppose it if re-submission thus becomes necessary, which would entail further delay in the reorganization. The Class B stockholders committee represents only 10,000 shares out of a total issue of 337,000 outstanding shares of Class B Stock, that is only about 3% of the whole issue. Although duly notified of the plan, no other Class B stockholders have taken any interest in the proposed reorganization by assenting or objecting thereto. Clearly the plan cannot be confirmed as to them unless it appears that the corporation with respect to that class of stock is insolvent, or the particular stock is of no value. Acting on this assumption, no effort was made by the debtor or others in interest to secure the affirmative acceptance of the Class B stockholders. On their behalf counsel for the Sidel Committee has submitted a brief in support of the proposition that the issuance of the warrants as proposed will not adversely affect the interests of the new Class A Stock to be issued by the debtor, and will not adversely affect the interests of the new Class B Stock; that there is authority for the issuance of such warrants even though no equity remains to the holders of the present Class B Stock; and that in view of the former financial contributions to the Company by the Class B stockholders they should be entitled to some form of participation in

the plan. It is said that the original contribution to the capital of the Company by Class B stockholders approximated $1,000,-000.

 . As a matter of general policy I am in accord with the proposition that on reorganization of a debtor corporation under 77B some prospect of recoupment of investment should, whenever reasonably feasible and practicable, be given to all classes of security holders; but on careful consideration I have concluded that the present case affords no reasonable basis for the amendment of the plan by issuance of warrants as suggested. The testimony in the case shows very definitely that this particular industry has for some years past been declining in earnings owing to changing conditions and very materially affected by recent legislation. A few years ago 3% net profit on gross sales was very generally realized by the industry as a whole; but recent changes have so adversely affected chain store grocery companies that the net profits have been reduced to approximately 1% on sales. The industry is therefore regarded as a declining one which probably can be saved only by substantial changes in management and conduct of the business, the success of which is problematical. There has been some apparent improvement in net earnings in the first months of this year by changes in operation, but not sufficient to restore net earnings equal to fixed charges. There is clearly now no value in the present B Stock and indeed a deficit of approximately $5,000,000 in that respect. That is to say, the debtor would have to increase its net worth about $5,-000,000 before the present B Stock would have any intrinsic value. In view of the past history and present prospects the hope of success in this regard seems entirely chimerical. Then again in my opinion the adoption of the amendment to provide for the warrants would materially affect, in the legal aspect, the interests of the present Class A stockholders, as now provided for in the plan; and would, I think, require a re-submission of the plan. Compare In re Anchor Post Fence Co., D.C.Md., 14 F. Supp. 801, 804. In addition to these objections there is also the consideration of the resultant delay and the disadvantage to the new financial statement of a seeming over-capitalization, and there is also the fact that such a very small percentage of present B stockholders are asking for the warrants.

 The point of law has been suggested, although it was not very strongly urged, that the plan may not properly be confirmed without the consent of the majority of the present Class B stockholders, unless the corporation is found to be insolvent. I am satisfied that the corporation is substantially insolvent unless some satisfactory plan of reorganization similar to the present is consummated, because if not, the alternative is foreclosure by the bondholders with resultant destruction of the small apparent equity of about $100,000 now available for Class A stockholders on liquidation. In every substantial financial sense the corporation is therefore really now insolvent. Clearly it would be insolvent on present liquidation with respect to Class B Stock.

 But if it be assumed that the corporation is still solvent, nevertheless I have reached the conclusion that the plan may properly be confirmed in view of the fact that there is now no equity in the assets of the corporation, and no reasonable prospect of such equity in the future, for the present Class B Stock of the debtor. The applicable statutory provisions are as follows: Section 77B of the Bankruptcy Act, paragraph (e) (1), 11 U.S.C.A. § 207(e) (1) provides:

"(e) (1) A plan of reorganization shall not be confirmed until it has been accepted in writing, whether before or after the filing of the petition or answer under this section, and such acceptance shall have been filed in the proceeding by or on behalf of creditors holding two thirds in amount of the claims of each class whose claims have been allowed and would be affected by the plan and by or on behalf of stockholders of the debtor holding a majority of the stock of each class: *Provided, however,* That such acceptance shall not be requisite to the confirmation of the plan by any creditor or class of creditors (a) whose claims are not affected by the plan, or (b) if the plan makes provision for the payment of their claims in cash in full, or (c) if provision is made in the plan for the protection of the interests, claims, or liens of such creditor or class of creditors in the manner provided in subdivision (b), clause (5), of this section: *And provided further,* That such acceptance shall not be requisite to the confirmation of the plan by any stockholder or class of stockholders (1) if the judge shall have determined either that the debtor is insolvent, or that the interests of such stockholder or stock-

holders will not be affected by the plan, or (2) if provision is made in the plan for the protection of the interests of such stockholder or class of stockholders in the manner provided in subdivision (b), clause (4), of this section."

Paragraph (b) (10), 11 U.S.C.A. § 207 (b) (10), provides:

"(b) * * * (10) No creditor or stockholder shall, for the purposes of this section be deemed to be affected by any plan of reorganization, unless the same shall affect his interests materially and adversely."

Paragraph (b) (4), 11 U.S.C.A. § 207 (b) (4), above referred to with respect to stockholders, reads as follows:

"(4) shall provide in respect of each class of stockholders, of which less than a majority shall accept such plan (unless the judge shall determine either that the debtor is insolvent, or that the interest of such class of stockholders will not be affected adversely by the plan), adequate protection for the realization by them of the value of their equity, if any, in the property of the debtor dealt with by the plan, either, as provided in the plan, (a) by a sale of the property at not less than a fair upset price, or (b) by appraisal and payment in cash of the value either of their stock, or at the objecting stockholders' election, of the securities allotted to such stockholders under the plan, if any shall be so allotted, or (c) by such methods as will do substantial justice to such stockholders under and consistent with the circumstances of the particular case;"

It will be noted that paragraph (e) (1) renders acceptance by any class of stockholders unnecessary either if the debtor is insolvent or the interests of such class of stockholders "will not be affected by the plan"; and by paragraph (b) (10), the stockholders are not deemed to be affected by the plan "unless the same shall affect his interests materially and adversely." It is difficult to understand how the present Class B Stock of this debtor which is of no value whatsoever can be said to be materially and adversely affected by a plan of reorganization which makes no provision for it. It receives nothing because it is worth nothing.

That this is the proper view of the statute is confirmed by the language of paragraph (e) (1) above quoted which, with respect to the acceptance of the plan by a class of stockholders provides that acceptance shall not be necessary "(2) if provision is made in the plan for the protection of the interests of such stockholder or class of stockholders in the manner provided in subdivision (b), clause (4), of this section." And it will be noted from paragraph (b) (4) (above quoted) that the plan of reorganization is required to provide, in respect of the class of stockholders of which less than a majority accept the plan, *adequate protection* for the realization by them of the value of their equity, *if any,* in the principal of the debtor dealt with by the plan. Thus, it would seem clear that if a particular class of stock has no equity in the property of the debtor it is not necessary to make provision for a nonexistent interest.

The application of these statutory provisions to a situation such as we have here, that is where there is an apparent small equity for one class of stock having priority over another, but none for the latter, either under present conditions or in reasonable prospect, seems not to have been heretofore judicially made. But in a closely analogous situation it has been decided by the Supreme Court that junior interests not supported by any equity in the property of the debtor need not be provided for in the plan of reorganization. In the Matter of 620 Church Street Building Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16, the court was asked by the second and third mortgage bondholders to vacate a plan of reorganization which had been confirmed by the district court, which made provision for the first mortgage bonds but none for the junior interests. In refusing to do so the Court, by the Chief Justice, said (page 89):

"The order of confirmation sets forth the findings of the District Court that the property in question has a fair market value of $245,025 and that there is no equity over and above the $445,500 of the first mortgage bonds; that the debtor is insolvent; that the claims of the junior lienors, the holders of the second and third mortgages, are of no value and hence that no securities or cash should be distributed under the plan in respect to their claims; that stockholders are not entitled to participate in the plan; and that the plan is 'fair, equitable, and feasible and does not discriminate unfairly in favor of any class or classes of creditors or stockholders.' * * *

986

"Petitioners insist that their consent to the plan of reorganization was necessary or that their claims should have been accorded 'adequate protection.' But the adequate protection to which the statute refers is 'for the realization of the value of the interests, claims or liens' affected. Here the controlling finding is not only that there was no equity in the property above the first mortgage, but that petitioners' claims were appraised by the court as having 'no value.' There was no value to be protected."

This case, it is true, dealt with the interests of junior creditors and not stockholders; but the statutory provisions for the protection of the several classes of creditors and stockholders respectively are very similar as will be readily apparent upon reading paragraphs (e) (1) and (b) (4) and (b) (5) of section 77B, 11 U.S.C.A. § 207(b) (4, 5), (e) (1). It appears therefrom that the plan of reorganization need not be accepted by a class of stockholders if provision is made for the protection of their interests in accordance with (b) (4) which has been above quoted. Similarly (e) (1) dispenses with the necessity of acceptance by any class of creditors "(c) if provision is made in the plan for the protection of the interests, claims, or liens of such creditor or class of creditors in the manner provided in subdivision (b), clause (5), of this section." (b) (4) provides that the non-assenting stockholder class are entitled to adequate protection for their equity, *if any*. And (b) (5) provides similarly with respect to creditors that they shall be provided "adequate protection". As the Supreme Court has held in the Church Street Case, supra, that junior creditors are entitled to no protection where their securities have no value, a similar ruling seems to be required with respect to a junior stock that has no value. See also Gerdes on Corporate Reorganization, Vol. 3, §§ 1115, 1116; Wayne United Gas Co. v. Owens-Illinois Glass Co., 4 Cir., 91 F.2d 827; Jamieson v. Watters, Hamilton Gas Co. Case, 4th Cir., 91 F.2d 61; Continental Ins. Co. v. Louisiana Oil Refining Corp., 5 Cir., 89 F.2d 333. In the Wayne Case, supra, it was said by Judge Parker (page 832):

"Since the stockholders and junior encumbrancers had no real interest in the property and no reasonable prospect of ever having such interest, * * * they had no interest in any plan for reorganizing the corporation, as they would not be affected by such plan and for that reason would not be entitled to voice or consideration in its adoption. See subdivision (b) (5)."

As a result of the hearing and further consideration of the case, I have concluded that the plan is fair, equitable and feasible and is not unfairly discriminatory. I have accordingly signed the appropriate order submitted by counsel confirming the plan.