In re REALTY ASSOCIATES SECURI-
TIES CORPORATION.

No. 45024.

District Court, E. D. New York.

Feb. 3, 1944.

Auchincloss, Alley & Duncan, of New York City (James B. Alley and Charles R. Lowther, both of New York City, of counsel), for debtor.

James F. Dealy, of New York City, for Amalgamated Properties, Inc.

George Zolotar and Kiva Berke, of New York City, for Securities and Exchange Commission.

Lewis, Marks & Kanter and Julius Silver, all of New York City (Jack L. Rappaport, of New York City, of counsel), for Bondholders' Protective Committee.

Halpin & Keogh, of New York City (Eugene J. Keogh, of New York City, of counsel), for trustees.

Herrick & Feinstein, of Brooklyn, N. Y. (Abraham Feinstein, of Brooklyn, N. Y., of counsel), for Bondholders' Directors' Committee.

Percival E. Jackson and Theodore N. Tarlau, both of New York City, for John Vanneck, Barbara B. Vanneck, Equitable Holding Corporation and Frank Bailey.

Harold W. Newman, Jr., of Washington, D. C., for Bondholders' Advisory Committee.

Newman & Bisco, of New York City (Perry A. Hull, of New York City, of counsel), for Manufacturers Trust Co.

788

Charles J. Buchner, of New York City, for Mary C. O'Neil.

Joseph R. Margulies, of New York City, for bondholders Ernestine Needles, Abraham Needles, Clara Margulies and Estate of William Margulies, deceased.

Root, Clark, Buckner & Ballantine, of New York City (William P. Palmer, of New York City, of counsel), for Consolidated Realty Corporation.

Archibald Palmer, of New York City, for Anna A. Kuhlmann and Catherine Kuhlmann.

MOSCOWITZ, District Judge.

The debtor is in the process of reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The trustees have applied for instructions concerning the policy to be followed by them in their contemplated use of the debtor's funds for the purchase of mortgages and have requested leave to use up to $200,000 for the purchase of mortgages of limited face value without requiring court approval for each individual transaction, it being proposed that a summary of the purchases made be submitted to the court at the end of three months or when $100,000 has been expended, whichever occurs first.

■ This proceeding has not yet reached the stage when the trustees file their report under Section 167 of the Act on the status of the debtor's business and the advisability of continuing operations, etc. But this is no barrier to the granting of the application. The fundamental purpose of a proceeding under Chapter X, as contrasted to a straight bankruptcy, is the preservation of the status quo—that is, the going-concern value—of the debtor until the trustees have had an opportunity to investigate its affairs and apprise the court of their true nature and to recommend a plan.[1] In furtherance of this purpose, the maintenance of the liquidity of the debtor's assets should be the paramount concern of the trustees, so that the position of the creditors, who have a prior claim to those assets, is not jeopardized.

■ This does not mean that the trustees must sit back and do no more than collect sums owing to the debtor as they mature. The trustees may continue the normal operation of the business of the debtor, whatever that may be, always keeping in mind that such operation must not impair liquidity.[2]

■ With regard to the present application, the contemplated purchases are not an investment by the trustees of liquid assets in their hands; the purchase of mortgages is no more than the continuance of the normal business in which the debtor was engaged before its petition was filed, just as would be the case of a department store debtor, the trustees of which sought to purchase additional merchandise in the ordinary course of continuing the debtor's business. This continuance of normal business by the trustees is contemplated in a Chapter X proceeding and this Court accordingly authorized and directed the trustees, in its order of September 28, 1943, appointing them, to continue the ordinary operation of the debtor.[3]

■ Under this authority, the trustees may purchase mortgages but in doing so, their first consideration should be the liquidity of those mortgages, from which it necessarily follows that they are authorized to purchase only first mortgages of a face value which represents such a percentage of the appraised value of the property as will entitle them to be designated "legal" investments, under statutory standards for savings banks, Banking Law, Section 235, subd. 6(a), Consol.Laws N.Y. c. 2. The greater the discount at which such mortgages can be procured, the greater the

[1] This purpose was emphasized in the report of the Judiciary Committee of the House of Representatives of June 2, 1933, on the original Section 77B, in which it was said: "While this bill was framed with due regard for the present and immediate prospective economic conditions, it is believed that an expansion of the opportunity for amicable adjustment by debtor and creditors, under the supervision and protection of the bankruptcy courts, and for holding the property of the debtor intact with its operation disturbed as little as practicable such as is provided for in this bill, will prove itself to be of permanently helpful assistance both to distressed corporations and in line with the public interest."

[2] For a similar expression of this Court's views on this subject, see In re Prudence Co., Inc., 14 F.Supp. 249.

[3] Statutory sanction for such authorization appears in Section 189 of the Bankruptcy Act, 11 U.S.C.A. § 589, which provides that the trustees "upon authorization by the judge, shall operate the business and manage the property of the debtor during such period, limited or indefinite, as the judge may from time to time fix * * *."

advantage to all parties interested in this proceeding but the amount of the discount is not necessarily the determinant of the character of the mortgage.

However, to permit all the attorneys who have appeared herein to express their views and make known to the Court and to the trustees any knowledge or information they possess with reference to any contemplated purchases, the Court, on the basis of the facts presently before it, deems it advisable that the trustees apply for judicial approval of each purchase before it is completed. The additional expense to be incurred thereby and the possible infrequent loss of a profitable opportunity by the necessary delay are outweighed by the advantages to be derived from hearing all parties.

The present application for leave to use the sum requested is accordingly denied, without prejudice to renewal at such time as circumstances make it advisable, and the trustees are instructed that they are authorized to continue the normal operations of the debtor as outlined in this opinion.