## In re CHILDS COMPANY.

District Court, S. D. New York.

Nov. 27, 1946.

George Zolotar, of New York City (Richard V. Bandler, of New York City, of counsel), for Securities and Exchange Commission.

Lorenz, Finn & Lorenz, of New York City (James J. Geraghty and Joseph Lorenz, both of New York City, of counsel), for John F. X. Finn, trustee of Childs Co.

Weinstein & Levinson, of New York City, for certain creditors.

Holmes, Rogers & Carpenter, of New York City, for Childs Co. Preferred Stockholders' Committee.

Root, Ballantine, Harlan, Bushby & Palmer, of New York City, for certain preferred stockholders.

Abraham K. Weber, of New York City, for certain stockholder.

Karelsen, Karelsen & Rubin, of New York City, for Childs Co. Preferred Committee.

Bergerman & Hourwich, and Samuel A. Mehlman, both of New York City, for Childs Co. Debenture Holders Committee.

Levin & Weintraub, of New York City, for Merchandise Creditors' Committee.

Murphy, Block, Sullivan & Sawyer, of New York City, for Childs Co. Common Stockholders' Committee.

Marshall, Bratter, Seligson & Klein, of New York City, for Protective Committee for Childs Co. Debentures.

Ehrich, Royall, Wheeler & Holland, of New York City, for certain stockholders.

Hetkin, Jervis & Hetkin, of New York City, for Bernice A. Phillips et al.

George M. Eisele, pro se.

CONGER, District Judge.

On or about March 4, 1946 the Trustee of Childs Company filed a proposed Plan of Reorganization. Commencing on April 15, 1946, approximately 20 hearings were had thereon, upon objections thereto, and upon numerous amendments thereafter submitted by the Trustee and interested parties. At these hearings two committees appeared for debenture holders, a committee for the merchandise and general creditors, two committees for preferred stockholders, and a committee for common stockholders. Many individual interests were also represented. The Securities and Exchange Commission appeared at all hearings.

Voluminous testimony comprising approximately 1,500 pages and covering every phase of the proposed Plan, amendments and objections was taken. Approximately 116 exhibits were submitted on behalf of the Trustee, the Commission, the respective committees for security holders, and individual stockholders. These exhibits, many of them most extensive and detailed in character, covered various phases of the financial history, the earning capacity, the value of the assets of the Debtor, and other pertinent data.

On September 30, 1946, an advisory report was filed by the Commission and, following further amendments to the Plan, several supplementary reports, dated respectively October 23, 1946 and November 8, 1946, were also filed by it.

The Trustee's Plan, as amended (hereinafter called the "Plan") provides for the payment in full of the claims of all creditors with interest. The principal of the debenture holders' claims (representing the face amount of the debentures with accrued interest at 6% from April 1, 1943 to August 26, 1943—when the petition for reorganization was filed) will be paid with interest at 6% from the latter date upon the principal as reduced from time to time by payments during the proceeding. Interest on the merchandise and other general creditors' claims (including landlords' claims) is likewise payable at 6%, except in any cases where otherwise provided by agreement. It is to be noted that during the course of the proceeding, the Trustee has made payments (including a 15% payment authorized by this Court by order dated November 25, 1946) upon the debentures and all other liquidated general claims, aggregating 85% of the principal amount thereof. Said payments, however, are to be applied first against interest accrued during the Reorganization Proceeding and the balance against principal.

Mortgages upon which the Debtor is liable are to be assumed by the reorganized company.

Inasmuch as the creditors are to be paid in full, the main question is the relative participation of the preferred and common stock in the reorganized company.

The Company has outstanding $3,731,600 face amount of 7% cumulative preferred stock, of the par value of $100 per share. No dividends have been paid upon this preferred stock since 1931; as of December 31, 1946, the accumulated dividends will aggregate approximately $3,918,180, or $105 per share. The par value of the preferred stock plus the accumulated dividends will amount at that date to approximately $7,650,000. There are also outstanding 324,415 shares of common stock, without nominal or par value.

The Plan proposes that the reorganized company shall have one class of stock only

858

—common stock, of which there are to be issued 486,706 shares without par value. It is proposed that this new common stock be allocated among the preferred and common stockholders upon the basis of approximately 76.67% to the present preferred stockholders and 23.33% to the present common stockholders, in exchange for their existing stock. This will mean that the preferred stockholders are to receive 10 shares of new common for each share of preferred stock or 373,160 shares of new common, and the present common stockholders are to receive seven shares of new common for each twenty shares of present common, or 113,546 shares—a total of 486,706 shares.

During the hearings, the preferred stockholders claimed that they were entitled to all of the new stock to be issued, and that any provision for the common stockholders should be solely in the form of warrants. The common stockholders, on the other hand, claimed that a larger proportion of the new stock should be allocated to them.

The preferred stockholders' position has been based upon their contention that the valuation of the Childs enterprise of approximately $10,000,000, upon which the above allocation is based, is excessive; they also claim that the preferred stock has various elements of value, which, in a going concern, would result in an "investment value" exceeding the sum of the present par value plus the accumulated dividends. Among these elements of value are the high 7% dividend rate, the fact that the stock is non-redeemable, and the provisions in the charter of the Company which create a reserve fund for the protection of the preferred stock. The reserve fund provisions require that the Company shall each year set aside as a reserve fund a sum equal to 10% of the net profits of the preceding year, until the fund should equal the par value of the outstanding preferred stock. The fund, at the date of the filing of the petition, was carried on the Company's balance sheet at the sum of $2,734,590, and specific assets were earmarked therefor. If the provisions with respect to the reserve fund were applied during the period of the trusteeship, the amount would be substantially increased. The preferred stockholders claim that the fund is held in trust for the benefit of the preferred stockholders free of the claims of creditors. The Trustee contends that the assets in the reserve fund are not so held in trust, but that they constitute a protective surplus reserve for the benefit of the preferred stock, not to be impaired by the declaration of dividends upon the common stock. In view of the fact that if the Plan is adopted by the stockholders, the rights of the preferred stock with respect to the reserve fund become immaterial, it is unnecessary for me to decide this question.

■ Both the Trustee and the Securities and Exchange Commission agree, however, that notwithstanding these special aspects of the preferred stock, the sum of the par value of the preferred stock and the accumulated dividends measures the extent of the preferred stockholders' claim; and that an allocation of new common stock to them based upon the proportion that this sum bears to the total value of the enterprise is an adequate recognition of their entire "bundle of rights." With this conclusion I agree.

As I have above stated, the estimates of value of the enterprise made by the representatives of the preferred and common stockholders were respectively greatly below and above the estimates of the Trustee and the Commission. It is interesting to note, however, that although the Commission and the Trustee, both disinterested parties, travelled entirely different roads in reaching their estimates of valuation, their conclusions closely approximated each other. The Trustee's ultimate valuation is approximately $9,980,000; that of the Commission is approximately $10,300,000.

■ It is clear that in determining the valuation of a commercial enterprise, such as the Debtor, the primary factor is the capitalization of its reasonably prospective earning capacity at an appropriate rate of capitalization. The rate used should reflect the risk inherent in the industry and the particular enterprise. Consolidated Rock Products v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982. The prospective future earnings are not determinable

merely on the basis of past earnings, although past history is an important guide in making such estimates. Consolidated Rock Products v. DuBois, supra; Dudley v. Mealey, 2 Cir., 147 F.2d 268–270, certiorari denied 325 U.S. 875, 65 S.Ct. 1415, 89 L.Ed. 1991; 1 Bonbright "Valuation of Property" (1937) § 249 et seq. Nor is it proper to assume that abnormal earnings created by war time conditions will continue indefinitely. As the Supreme Court stated in Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 318 U.S. 523, 543, 63 S.Ct. 727, 739, 87 L.Ed. 959: " * * * The bulge of war earnings per se is unreliable for use as a norm unless history is to be ignored * * *." See also Dudley v. Mealey, supra.

The Trustee estimated that the reasonably prospective earnings of the enterprise in a "normal economy" would be $1,500,000 net before taxes. After deducting estimated taxes he capitalized the remainder of $958,500 at a 10% rate. After making various adjustments, the Trustee finally arrived at an ultimate valuation of about $9,980,000. The Commission estimated the prospective earnings before income taxes to be $1,100,000 and, after income taxes (at 35%), to be $715,000. The Commission, however, used the less conservative capitalization rate of 8%, in determining valuation. After its various adjustments, it concluded that the valuation was approximately $10,300,000.

The estimates of reasonably prospective earnings of both the Trustee and the Commission are optimistic judging from the past record of the Company. On the other hand, during the reorganization many factors contributing to the unfavorable past record have been eliminated, and both the Trustee and the Commission predicate their conclusions on a thoroughly rehabilitated chain.

After the testimony and exhibits had been adduced at the hearings, the Committee representing the two classes of stockholders as well as a number of large individual stockholders, met with the Trustee and the Commission, in an effort to harmonize their differences.

To achieve this purpose, the Trustee amended his original plan by proposing an allocation of 76.67% of the new common stock to the preferred stockholders and 23.33% to the common stockholders. All of the committees and practically all of the important stockholders who participated fully in the extended hearings before me, as well as the Securities and Exchange Commission, agreed to this allocation.

■ I am mindful of the fact that valuation in a situation of this character is not susceptible of mathematical certitude, but rather is fundamentally an educated appraisal of the future based on an informed judgment of all the facts. Consolidated Rock Products v. DuBois, supra. After considering the evidence adduced before me at the hearings with respect to value, and bearing in mind the insubstantial difference between the valuations of the Trustee and the Commission, and in further view of the substantial agreement of all the major interested parties herein, I find and approve a total valuation of the equity for the stockholders in the enterprise in the sum of approximately $9,980,000; and I further find that the allocation of new common stock in the respective percentages of 76.67% to the preferred stockholders and 23.33% to the common stockholders is fair, equitable and feasible.

The Plan provides for a Term Bank Loan in the sum of $2,000,000 at 3% interest. The loan is deemed necessary to provide funds to complete a rehabilitation plan. All parties agree that the rehabilitation plan is required, and the estimates of earnings of both the Trustee and the Commission are predicated upon a rehabilitated chain. It is proper in my opinion for the Plan to provide the funds required to accomplish the program upon which the Plan itself is based. I, therefore, approve the bank loan as proposed by the Trustee.

■ The Plan provides that the first Board of Directors of the reorganized company shall consist of not less than nine nor more than fifteen members who will hold office until the first annual meeting of the stockholders following the consummation of the Plan. It also states that

directors who are to constitute the first Board may be nominated by any stockholder or other interested party and that the selection of directors from among the individuals so nominated shall be made in such manner as the Court may prescribe, and subject to the approval of the Court. This provision I find complies with Chapter X, Section 216, subdivision 11, 11 U.S.C.A. § 616, sub. 11. I direct, therefore, that at the time that the Plan is sent to the security holders, the stockholders or any other interested party be invited to make nominations of suitable persons for the Board of Directors. Said nominations are to be in writing to be transmitted to the Trustee together with appropriate detailed factual information regarding such nominees. If and after the Plan is accepted by the stockholders, all parties in interest will receive notice of a hearing, to be held on confirmation of the Plan, at which the qualifications of the proposed directors will be considered. Following the hearing, I shall approve a Board of Directors, selected from the nominees so proposed.

I find, therefore, that the Trustee's Plan as amended is in all respects fair and feasible and is in the interest of the respective security holders; and that all other plans submitted to the Court are either unfeasible or unfair or both.

Settle order on notice.