Petition of PORTLAND ELECTRIC POWER CO.

WHITE et al. v. PORTLAND ELECTRIC POWER CO. et al.

No. 11441.

Circuit Court of Appeals, Ninth Circuit. June 17, 1947.

---

Justin N. Reinhardt, of Portland, Or., for appellants.

Ralph H. King and Grant T. Anderson, both of Portland, Or., for appellees Delzell and Clark.

MacCormac Snow, H. B. Beckett, and R. K. Powell, all of Portland, Or., for appellee Prior Preference Stockholders.

Roger S. Foster, Sol., Robert S. Rubin, Associate Sol., Harry G. Slater, Chief Counsel, Public Utilities Div., Harlow B. Lester and Alexander Cohen, Attys., SEC., all of Philadelphia, Pa., and W. Stevens Tucker, Atty., SEC., of San Francisco,, Cal., for appellee Securities and Exchange Com.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge..

From an order approving a plan of reorganization of the debtor, the present appeal has been taken.

The debtor, an Oregon corporation, comes within the terms of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. c. 2C, § 79 et seq. On April 3, 1939, it filed a petition for reorganization under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. c. 10, § 501 et seq.

On August 3, 1945, the trustees of the debtor filed three alternative proposed plans for reorganization. By order of the court, the plans were submitted to the Securities and Exchange Commission, which, on January 14, 1946, issued its order, pursuant to 11 U.S.C.A. § 572, approving the trustees' second alternative amended plan, subject to certain conditions. On January 21, 1946, the trustees filed a revised version of that plan, amended further to comply with the conditions set forth in the order of the Commission.

A special master was appointed to conduct a hearing with respect to the plan, hear evidence thereon, make findings of fact and conclusions of law, and report to the court. Hearings were held, during which the appellants filed objections to the plan, on the ground that it "is not fair and equitable to the holders of the First Preferred Stock of the debtor in that it discriminates unfairly in favor of the holders of the Prior Preference stock. * * *"

On March 6, 1946, the master filed his report, overruling the appellants' objections and approving the plan. The appellants' exceptions were overruled by the court, which confirmed the master's report and approved the plan. On April 17, 1946, the court entered an order setting aside its informal order of approval, and once more referred the matter to the master.

On April 19, 1946, the master filed a further report, adopting and incorporating substantially all of his previous report and making specific findings of fact and conclusions of law. The appellants' exceptions to this second report were overruled on June 29, 1946, by an order confirming the report of the special master and approving the trustees' second alternative amended plan of reorganization, as amended in compliance with conditions of orders of the Securities and Exchange Commission.

Although, under the terms of the plan, the debtor is to be dissolved and liquidated and its assets are to be distributed, the introductory statement indicates that the reorganizaion blueprint envisages the continuation of the business through subsidiaries with "reclassified common stock."

The approved plan involves a revision of the debtor's capital structure, consisting of bonds, prior preference stock, first preferred stock, second preferred stock, and common stock. Under it, the bondholders' claim for principal and interest, and the claim of the prior preference stockholders for the par amount of their stock, together with dividends from January 1, 1933, to October 31, 1945, would be completely satisfied. This would leave in the estate an amount insufficient to compensate the first preferred stockholders for the par amount of their stock, the plan providing for the distribution to them of the remaining equity in the estate.

The appellants contend that $2,718,291 of the new securities that the plan would give the prior preference stockholders—representing dividends unpaid after the petition was filed—actually belongs to the first preferred stockholders. In their statement of

·620

points to be relied upon in this appeal, the appellants thus set forth their position:

"* * * as a matter of law, the prior preference stockholders are not entitled, under any plan of reorganization, to compensation for dividends on their stock for any period subsequent to the institution of the within proceeding until after the first preferred stockholders have been compensated in full for their claim based upon the par or liquidating value of the first preferred stock. The plan approved by the order from which this appeal is taken conflicts with that principle of law and accordingly discriminates unfairly against the first preferred stockholders and in favor of the prior preference stockholders. It follows that the plan approved by the court is not fair and equitable and the order appealed from approving said plan is erroneous."

So far as it goes, the debtor's charter must furnish the measure of the relative rights of the prior preference stockholders and the first preferred stockholders. In so far as the charter is silent, it must be supplemented by well-established legal implications.

Article VII of the debtor's supplementary articles of incorporation reads in part as follows:

"Section 1. The holders of the Prior Preference Stock are entitled to receive, when and as declared out of the surplus or net profits of the company, dividends at the rate of 7% per annum, payable as the Board of Directors may determine, *before any dividends shall be set apart for or paid upon the First Preferred Stock, the Second Preferred Stock or the Common Stock.* The holders of the First Preferred Stock are entitled to receive, when and as declared out of the surplus or net profits of the Company, dividends at the rate provided for each series (either 7.2% or 6% or $6), payable as the Board of Directors may determine, *before any dividends shall be set apart for or paid upon the Second Preferred Stock or the Common Stock.* The dividends upon the Prior Preference and First Preferred Stocks shall be cumulative, but accumulations of dividends shall not bear interest. The holders of the Second Preferred Stock are entitled to receive, when and as declared out of the surplus or net profits of the Company, dividends at the rate of $6 per share per annum, payable as the Board of Directors may determine, *before any dividends shall be set apart for or paid upon the Common Stock.* The dividends upon the Second Preferred Stock shall not be cumulative. The Board of Directors may pay dividends upon any class of stock, *provided dividends upon any and all prior classes, with all accumulations including accrued dividends to the date of payment of the dividend in question, shall have been paid in full or a sum sufficient for the payment thereof shall have been set apart for that purpose, but not otherwise,* provided dividends shall not be paid upon the Common Stock unless dividends on the non-cumulative Second Preferred Stock at the rate of $6 per share per annum for a period of six months immediately preceding the day on which the Common Stock dividends is paid shall have been paid in full or a sum sufficient for the payment thereof shall have been set apart for that purpose. * * *" (Emphasis supplied)

From the foregoing provisions, it is evident that, at least while the corporation was engaged in its normal activities as a going concern, its organic law envisaged that the claims of its senior stockholders as to dividends should be completely satisfied *to date of payment* before any attempt was made to provide dividends for the junior stockholders.

Should this same measure of priority obtain when the corporation is being reorganized under the provisions of Chapter 10? The answer of the charter to this question is not so unequivocal, and we must resort to the authorities for a complete solution.

Section 2 of Article VII of the debtor's supplementary articles of incorporation is in part as follows:

"Section 2. In case of liquidation or dissolution of the Company, the assets, whether consisting of capital assets or accumulated earning, shall be distributed as follows: To the holders in the order named, First, of the Prior Preference Stock, Second, of the First Preferred Stock *in each case to the extent of $100 per share of each of said classes, together with unpaid dividends accumulated and accrued thereon, re-*

*spectively*, Third, of the Second Preferred Stock, to the extent of $100 per share, together with any dividends which may have been declared thereon and remain unpaid, and in case the assets shall not be sufficient to pay in full $100 per share of [sic] and such unpaid dividends or any one or more of said classes of stock, the assets applicable to the payment of the class which can be paid in part only shall first be applied to the payment of the $100 per share thereof (in full if sufficient, if not, pro-rata), and any remaining assets shall be distributed pro-rata on account of such unpaid dividends on such class, and Fourth, of the Common Stock, who shall be entitled to all the remaining assets and funds, according to their respective shares." [Emphasis supplied]

The appellants characterize as "decisive" the presence of the words "to the date of payment" in Section 1 of Article VII, and their absence from Section 2. In support of their contention on this particular point the appellants cite Hammer v Tuffy, 2 Cir., 145 F.2d 447, 449, and a number of state decisions. It is difficult to see the application of the Hammer case to the situation before us here. That litigation did not involve a corporation at all, much less the interpretation of a corporate charter in connection with reorganization proceedings under Chapter 10.

■ As to the state cases relied upon by the appellants, we may observe at the threshold of our discussion that the decisions of state courts cannot assist us in determining the rights of the parties to the present controversy. In Prudence Realization Corporation v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293, Mr. Chief Justice Stone said:

"Nothing decided in Erie R. Co. v. Tompkins, [304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487], requires a court of bankruptcy to apply such a local rule governing the liquidation of insolvent estates. The bankruptcy act prescribes its own criteria for distribution to creditors. In the interpretation and application of federal statutes, federal not local law applies. [Many cases cited.]"

See also Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 162, 163, 67 S.Ct. 237.

Considering the present problem in its proper setting, we find that but one or two questions require extended analysis or examination of authorities.

■ It should be kept in mind that the present litigation is not, in the true sense of the word, a bankruptcy proceeding. In Lowden v. N. W. National Bank, 298 U.S. 160, 163, 164, 56 S.Ct. 696, 698, 80 L.Ed. 1114, Mr. Justice Cardozo said:

"A proceeding to reorganize is not a bankruptcy, though an amendment to the bankruptcy act creates and regulates the remedy. * * * If a plan of reorganization is not proposed or accepted, or, being proposed and accepted, is not confirmed by the court within a reasonable time, the whole proceeding may be dismissed, section 77(c) (7) [11 U.S.C.A. § 205, sub. c(7)] the title of the estate thus reverting to the debtor. By that time there may even be ability to pay demands as they mature. What is done at the beginning amounts to little more than a provisional sequestration to give protection for the future.

"* * * Irrespective of the acceptance or confirmation of a plan, the trustees must have the power to gather in the assets and keep the business going."

■ As a corollary to this fundamental proposition, it follows that the debtor corporation is to be regarded as a going concern and not as a moribund or defunct entity. In Re Rosenbaum Grain Co., D.C.Ill., 13 F.Supp. 600, the court said:

"It was not the purpose of Congress in enacting section 77B [of the Bankruptcy Act (11 U.S.C.A. § 207)] simply that the property of the debtor be disposed of and he be discharged from his debts, but the property remains in the custody of the court to be managed and operated by the court.

"The purpose of the act is to protect the interests of the debtor in case he is not insolvent but merely unable to meet his debts as they mature; to keep the property or business intact if that may be done; to provide for the reorganization of the debtor

corporation and the development of a plan by the terms of which the debtor, its stockholders, and the creditors may receive fair and reasonable treatment."

See also In re Realty Associates Securities Corporation, D.C.N.Y., 54 F.Supp. 787, 788.

In other words, the type of debtor that we are here considering is one that, at the time the petition was filed, could not meet its debts as they matured, but one that is to be operated as a going concern until, by means of skillful management and reorganization, its business becomes solvent in every sense of the word.

What, then, are the norms to be applied in determining the rights of the various classes of stockholders in this type of corporate debtor?

■ In the first place, the plan of reorganization must be "fair and equitable". Such is the mandate of the statute (11 U. S.C.A. § 621), and such have been the repeated holdings of the Supreme Court. Case v. Los Angeles Lumber Co., 308 U.S. 106, 114, 115, 118, and 120 (footnote 14, last paragraph), 60 S.Ct. 1, 84 L.Ed. 110, Otis & Co. v. Securities & Exchange Commission, 323 U.S. 624, 634, 65 S.Ct. 483, 89 L.Ed. 511.

■ Applying the "fair and equitable" standard to controversies among stockholders, the Supreme Court has held that, where the corporate charter so provides, the courts must recognize the "full priority" of senior stockholders. In the Otis case, supra, 323 U.S. at page 634, 65 S.Ct. at page 488, the court said:

"Like the bankruptcy and reorganization statutes, the Public Utility Holding Company Act, in providing that plans for simplification be 'fair and equitable,' incorporates the principle of *full priority* in the treatment to be accorded various classes of security interests. This right to priority in assets which exists between creditors and stockholders, *exists also between various classes of stockholders.* When by contract as evidenced by charter provisions one class of stockholders is superior to another in its claim against *earnings* or assets that superior position must be recognized by courts or agencies which deal with the *earnings*

or assets of such a company. Fairness and equity require this conclusion." (Emphasis supplied)

See also Taylor v. Standard Gas Co., 306 U.S. 307, 323, 324, 59 S.Ct. 543, 83 L.Ed. 669; 2 Gerdes on Corporate Reorganizations, § 1082, page 1727.

We come finally to the crucial question of whether or not this doctrine of "full priority" for senior stockholders entitles the prior preference stockholders in the instant case to dividends accrued "to date of payment".

In the first place, a corporation under reorganization is to be regarded, as we have seen, as a going concern. That being so, it is logical that the prior preference stockholders should continue to receive dividends so long as the earnings of the corporation justify their doing so.

Again, we have noted that there is an analogy between the rights of senior and junior creditors and those of senior and junior stockholders. Otis & Co. v. Securities & Exchange Commission, supra. "Where in the administration of the affairs of an insolvent corporation there are claims of different rank, the holders of prior claims are entitled to interest *to the time of payment,* even though the payment thereof may deprive the holders of subsequent claims of any participation in the funds of the bankrupt." [Emphasis supplied] In re Deep Rock Oil Corporation, 10 Cir., 113 F. 2d 266, 269, certiorari denied, 311 U.S. 699, 61 S.Ct. 138, 85 L.Ed. 453, and the cases there cited.

■ By a parity of reasoning, senior stockholders should be entitled to dividends *to the time of payment,* even though the payment thereof may deprive the holders of junior stock of any participation in the funds of the reorganized corporation.

It is not necessary, however, to rely upon either inference or analogy to arrive at the correct solution of this question. There is respectable authority for the proposition that, in a case like this, the senior stockholders should be allowed dividends that have accrued at the date of payment.

In In re National Food Products Corporation, D.C.Md., 23 F.Supp. 979, 980, 981, 982, 986, the debtor corporation filed reor-

623

ganization proceedings on December 1, 1937, and filed its reorganization plan on April 4, 1938. Under that plan, the "new preferred and participating stock," was to be entitled to a dividend of $1.20 per share per annum in preference to dividends on certain common stock. The dividends were to be "accumulative" and were to accrue from *May 1, 1938.* Class B stock was held to have no equity in the assets of the debtor. The court approved the plan.

Again, in In re Chicago, G. W. R. Co., D.C.Ill., 29 F.Supp. 149, 152, 159, 160, 161–162, the debtor filed its petition for reorganization on February 28, 1935. The court found that the accumulated dividends on the preferred stock amounted, *on June 1, 1939,* to $41,005,415, "which the preferred stockholders would be entitled to receive prior to any payment of dividends or distribution of assets to the common stockholders." The court observed:

"It would be unfair to allocate anything of value to the present common stockholders prior to full settlement of the preferred stockholders' interests. [Cases cited]"

A plan of reorganization in the case of In re Utilities Power & Light Corporation, D.C.Ill., 29 F.Supp. 763, 765, 766, 767, 768, was filed February 1, 1939, and was amended on June 30 and July 10, 1939. The stock consisted of 7% preferred, Class A, Class B, and common. On July 31, 1939, the arrearages on the preferred stock dividends amounted to $8,210,386. In approving the plan, the court said:

"The Special Master and the [Securities and Exchange] Commission found the value of the property to be less than the amount of the debentures, plus interest, and the preferred stock plus the arrearages of dividends. Unless, therefore, the Special Master and the Commission were in error in so finding the holders of Class A, Class B and common stock had no equity in the property of the Debtor, it was not necessary in the plan to make provision for them nor was their acceptance of the plan necessary."

It should be noted that the cases of In re National Food Products Corporation and In re Utilities Power & Light Corporation, supra, were cited with approval by the Supreme Court in Otis & Co. v. Securities & Exchange Commission, supra, 323 U.S. at page 634, footnote 16, 65 S.Ct. at page 488.

The trustees of the debtors in the case of In re Midland United Co., D.C.Del., 58 F. Supp. 667, 670, 678, 680, 683, 685, submitted a plan of reorganization on November 9, 1943. Under the plan, which was approved by the court, the preferred stockholders of one of the debtors were to receive stock "plus cash representing dividends to be paid on the common stock of Public Service Company of Indiana, Inc. [a subsidiary] * * *." The court continued:

"The [Security and Exchange] Commission has estimated that these dividends will amount to at least $245,000 *as of the end of September, 1944.*" [Emphasis supplied]

Finally, in the very recent case of In re Childs Co., D.C.N.Y., 69 F.Supp. 856, 857, 858, the debtor's trustee filed a proposed plan of reorganization on March 4, 1946. After a number of amendments had been made to the plan, the Securities and Exchange Commission filed an advisory report and two supplementary reports, the second of which was dated November 8, 1946. In approving the trustee's plan, as amended, the court said:

"The Company has outstanding $3,731,-600 face amount of 7% cumulative preferred stock, of the par value of $100 per share. No dividends have been paid upon this preferred stock since 1931; *as of December 31, 1946,* the accumulated dividends will aggregate approximately $3,918,180, or $105 per share. The par value of the preferred stock plus the accumulated dividends will amount *at that date* to approximately $7,650,000. * * *

* * * * * *

"Both the Trustee and the Securities and Exchange Commission agree, however, that notwithstanding these special aspects of the preferred stock, the sum of the par value of the preferred stock and the accumulated dividends measures the extent of the preferred stockholders' claim; and that an allocation of new common stock to them based upon the proportion that this sum bears to the total value of the enterprise is an adequate recognition of their entire

'bundle of rights'. **With** this conclusion I agree." [Emphasis supplied]

██ Both on reason and authority, therefore, we hold that the "bundle of rights" of the prior preference stockholders herein includes accrued dividends from April 3, 1939, when the petition was filed, to October 31, 1945, the date as of which the assets of the debtor were valued, and the claims against it calculated.

Accordingly, the order of the court below, confirming the special master's report, is affirmed.

San Francisco, Cal., for appellee Securities and Exchange Commission.

Clarence D. Phillips, of Portland, Or., for appellee Portland Electric Power Co.

Hart, Spencer, McCulloch & Rockwood, of Portland, Or., for appellee Guaranty Trust Co.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.