## KIRBY et al. v. COMMISSIONER OF INTERNAL REVENUE. *

### No. 8927.

Circuit Court of Appeals, Fifth Circuit.

March 8, 1939.

J. L. Lockett, of Houston, Tex., for petitioners.

Arnold Raum, Sewall Key, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., Jas. W. Morris, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Harold Allen, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from an order of the Board re-determining deficiencies in income taxes for the year 1929.

What is in question here is whether four purported fact findings, on which the re-determination is in part based, shall stand. Petitioners concede that if they are supported by evidence, the determination and order must be affirmed. They contend that the findings, or some of them, are without support, and that there should be a reversal and remand for a new determination.

The four findings attacked are: (1) That petitioners realized a gain of $5096.-10 from the sale of Kirby Lumber Company bonds; (2) that the obligation of one Bass, in the amount of $25,000, was not ascertained to be worthless in 1929, and ought not to have been charged off in

that year; (3) that the stock of Braeswood Corporation did not become worthless in 1929; (4) that petitioners received in 1929 taxable liquidating dividends from the Texas Banking & Investment Company, in the amount and value found by the Board. Petitioners insist that the Board erred in respect of all these findings; the respondent, that it erred in none of them.

We agree fully with neither petitioners nor respondent. We think the evidence supports some of the complained of findings, fails to support others, and that the findings should be in part affirmed, in part reversed. Except as to the values to be placed on lands of the Gladys Oil Company, the facts are not in dispute; indeed, they are in large part stipulated. The opinion of the Board,[1] sets them out quite fully, and we will content ourselves as to each of the points at issue, with merely pointing out such of them as seem to us significant and controlling.

◼ The correctness of the first finding complained of, as is fully shown in the opinion of the Board, turns upon whether petitioners have, by their evidence, overcome the finding of the Commissioner that the bonds, when received in 1923, had a market value of less than par, towit, 83¢. If they have, the determination must be reversed, for while the Board did find the value of the bonds to be 88¢, it did this through a computation based on the Commissioner's finding of 83¢.

Petitioners do not claim to have offered any evidence as to the market value of the bonds as such, in 1923. Their claim is that the stipulated facts, (1) that in determining income tax liability in 1923, the bonds were valued at par, and (2) that in February, 1913, the assets of the company exceeded its liabilities, excluding $5,000,000 common and $5,000,000 preferred stock, by $14,485,626.46, to which were added in 1923 $2,064,373.54 of net earnings, accrued and undistributed, overthrow the Commissioner's determination of an 83¢ value for the bonds, by establishing their value at at least, par.

We do not think so. The first supposed fact relied on, that the bonds were valued in 1923 at par for income tax purposes, is not, we think, a fact at all, having significance either evidentiary or by way of estoppel.

The second fact relied on, while indeed a fact, as to the value of the assets in 1913, and as to the added undistributed earnings in 1923, is not, we think, a fact establishing a value for the fifteen year bonds in 1923 sufficient to overcome the finding of the Commissioner, that they were on that date, worth less than par. We therefore reject as unfounded, petitioners' attack upon the first finding.

◼ Upon the second finding, as to the Bass note, we agree with the Board. It is quite clear that the evidence affords no reasonable ground for claiming that the uncollectibility of this note was ascertained in the year 1929. It is quite plain, indeed, that for many years the note had had no value, and that its taking as a loss in 1929 was arbitrary and wholly unwarranted.

◼ As to the third finding, that the Braeswood Corporation stock did not become worthless in 1929, we agree with petitioners, that this finding is without support in the evidence, and that petitioners are entitled to a re-determination of the 1929 deficiency which allows this deduction.

While it is true that petitioners' return did not claim that the stock had become entirely worthless in 1929, but only that there had been a loss in that year, of 95% of its value, this is of no significance; for whether the stock did or did not become worthless is a fact to be determined from the evidence, and not from what was claimed in the return, where, as here, no element of estoppel is or could be present.

The facts are fully set out in the opinion of the Board. Boiled down, they come to this. Heavily involved, with maturing debts it could not meet from its own resources, the Braeswood Corporation, a land company, with its assets almost entirely frozen, was during at least the last half of the year 1929 in a desperately failing condition. Everyone connected with the corporation, including the management, its creditors, and its stockholders, knew that from this condition there was no relief, unless the stockholders would voluntarily assess themselves for large sums to meet its obligations. Negotiations and efforts to this end were therefore set on foot, and continued through most of the last half of the year. In December, however, these efforts were defi-

---

[1] 35 B.T.A. 578.

nitely abandoned when it was finally decided by the stockholders that they would put no new money into the failing venture, but would abandon the corporation as insolvent, and leave it to its fate. This they did definitely, and with the complete understanding and realization that the result of their action was to wipe out completely the value of their stock. All understood that, failing help from them, the property would be taken over by its creditors, and nothing would be left for the stockholders. With this consequence of their decision definitely in mind, and fully and carefully debated, the stockholders came to a complete and final decision in December 1929, and thereby definitely fixed and established as occurring in that year, and as the event of that decision, the complete worthlessness of the stock. Royal Packing Co. v. Com'r, 9 Cir., 22 F. 2d 536; Industrial Rayon Corp. v. Com'r, 6 Cir., 94 F.2d 383; c/f Darling v. Com'r, 19 B.T.A. 337, affirmed Darling v. Com'r, 4 Cir., 49 F.2d 111.

We therefore reverse this finding of the Board, as unsupported by the evidence, with directions to re-determine the deficiency and to allow this deduction in doing so.

■ Of the findings complained of, the 4th, that petitioners received in 1929 dividends in liquidation of the Texas Banking & Investment Company in the amount and value as found by the Board, is most vigorously attacked and defended, and raises questions both of law and of fact of the greatest difficulty.

Petitioners insist that there is fundamental error in the finding that Kirby was the owner, in 1929, of Texas Banking Company stock, and received its assets in that year in liquidation. They urge upon us that when, in February, 1925, the charter of the company expired, and it was dissolved and went into liquidation, the transferable character of its corporate stock was destroyed, and those who were stockholders at the time of the dissolution could not thereafter transfer stock in the corporation, so as to confer upon the transferee the statutory rights and liabilities of the stockholders. They urge that the only effect of a proposed transfer in such circumstances would be to transfer to the assignee his share or portion of the assets of the dissolved corporation. They insist, therefore, that the proof showing that Kirby bought Mrs. Willson's stock in 1927, two years after, and that of adverse claimants in 1928 and 1929, three and four years after the dissolution, petitioners were not stockholders in the company, but were merely assignees of its property, and may not be held as stockholders, to have received liquidating dividends. In their support they cite Peurifoy v. Wiebusch, Tex.Com.App., 117 S. W.2d 773, as holding that after dissolution, the property of a corporation vests in the stockholders in proportion to the amount of stock owned by them, and as supporting the view urged here, that purported transfers of stock thereafter are not in fact transfers of stock, but of interests in the assets of the company.

We find nothing in the Peurifoy case, or in any of the other cases cited, which at all supports the view that by his purchase of stock Kirby did not succeed to the position of stockholder so as to be liable for the tax on liquidation as his transferors would have been. We find, in short, neither in the authorities cited, nor in the arguments advanced, anything which permits petitioners to take the company's assets from the liquidating trustees by virtue of their stockholdings, while denying that position for purposes of taxation. We think it quite plain that whatever may be the technical name for the situation in which petitioners found themselves, when, in 1929, as holders of the stock, they took the assets in liquidation, in substance and in fact they were stockholders, receiving liquidating dividends, and as such, are subject to be taxed upon them.

We therefore agree with the conclusion of the Board that petitioners, in 1929, received dividends in liquidation of the Texas Banking & Investment Company. But we do not agree with the finding it made as to the value of the dividends so received.

■ We think there was error here in two particulars. There was the fundamental one of undertaking to value petitioners' interest in the stock of the Gladys City Company, received by them in the Texas Banking liquidation, as though the interest they received was not shares of stock in a going concern, but an undivided interest in land and minerals. Petitioners, without waiving, but expressly reserving their contention that such values were irrelevant, stipulated the value of the mineral interests of the company, and there was considerable evidence as to the value,

exclusive of minerals, of the lands it owned. There was no evidence as to the value, as such, of the stock, and no finding as to its value as such. We think it plain, that since what petitioners received in liquidation was an interest in the stock of the Gladys City Company, and not an interest in its property, the fair value of the stock, as affected by .the contract under which .they held it, and not the value of an interest in the lands and minerals, should have been found and used as the basis for the tax, and in so doing, some. consideration should have been given to Kirby's obligation, which went with the stock, and fixed and determined its value in his hands, that he must pay to the seller of it amounts equal to 1/4 of the total dividends on the entire capital stock, to-wit, 540 shares as and when declared and paid by the company out of its present holdings. The Board not only failed to value the stock as stock, but in valuing the property of the Company, and petitioners' interest in it, it declined to make any allowance against the value, for the burden of the contract under which the stock had been bought and held. The result was neither, a true nor a fair, determination of value. The finding which mirrors that result may not stand.

.Therefore, approving findings one, as to profit on the bonds, and two, as to the Bass charge-off, and disapproving findings three, as to the disallowance of loss on the Braeswood stock, and four, as to the valuation of the assets. of the Texas Banking & Investment Company received in liquidation, we reverse the order of the Board, and remand the proceedings to it for a redetermination of the deficiencies in accordance herewith.

Reversed and remanded. ·