Avery **BRUNDAGE** and Elizabeth D. Brundage, Plaintiffs-Appellants,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 12762.

United States Court of Appeals Seventh Circuit.

Feb. 5, 1960.

Rehearing Denied In Banc March 30, 1960.

Ralph E. Davis, C. Ives Waldo, Jr., William P. Sutter, Chicago, Ill., Hopkins, Sutter, Owen, Mulroy & Wentz, Chicago, Ill., of counsel, for appellants.

Charles K. Rice, Asst. Atty. Gen., Loring W. Post, Atty., U. S. Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., H. M. Silets, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Avery Brundage and Elizabeth D. Brundage, his wife, plaintiffs, appealed from the district court's order dismissing with prejudice and costs their complaint for a refund of federal income tax in the amount of $39,076.12, paid by them as a deficiency for the calendar year 1948, plus interest in the amount of $7,731.07 paid by them upon said deficiency, a total of $46,807.19, plus interest on said total as allowed by law.

Defendant, United States of America, having filed an answer, the facts were stipulated.

The court entered findings of fact and conclusions of law.

During the years 1944–1946, plaintiffs acquired 3,633 shares of 7% cumulative prior preference stock of Portland Electric Power Company (hereinafter referred to as "Portland"), a public utility holding company, at a cost of $140,031. During 1948 plaintiffs sold all of such stock (also herein referred to as prior preference stock) for an aggregate net price of $608,063.16. They reported the difference between said cost and said sale price, i. e., $468,032.16, as long-term capital gain on their joint income tax return for 1948, and paid income tax on said gain.

The internal revenue service contended that $103,091.25 of the $468,032.16 reported by plaintiffs as long-term capital gain was constructively received by plaintiffs as a dividend and should have been reported as dividend income, and adjusted plaintiffs' taxable income for 1948 accordingly. Based on said adjustment plaintiffs paid said deficiency.

For some years prior to 1948 Portland was involved in a bankruptcy reorganization proceeding in the United States District Court for the District of Oregon and in a proceeding before the Securities and Exchange Commission relating to its liquidation as a public utility holding company. The reorganization was consummated pursuant to a formal Plan of Reorganization [1] confirmed by the District Court on October 11, 1947.

Under this Plan, Portland General Electric Company (hereinafter referred to as "PGE"), a wholly owned operating subsidiary of Portland, was to reclassify and increase its authorized common stock and to issue to Portland $998,966\frac{5}{100}$ shares of such new common stock in exchange for the previously outstanding common held by Portland. PGE was also to transfer to Portland a dividend of $1,600,000 in cash and $93,000 principal amount in Portland's own bonds. Portland was then to distribute cash and common stock of PGE to the holders of Portland's bonds and prior preference and first preferred stock in exchange for the Portland securities held by them.[2]

Under the Plan, the holder of each share of prior preference stock was to receive, in exchange therefor, 6⅓ shares

---

1. Herein sometimes referred to as the Plan.

2. The holders of prior preference stock, by its terms, were entitled to cumulative dividends at the rate of 7% per annum from January 1, 1933, and upon liquidation or dissolution of Portland were entitled to priority over the holders of other classes of stock in the distribution of assets to the extent of $100 per share, together with unpaid accumulated dividends. The first preferred stock of Portland was junior to the prior preference stock, but ranked ahead of the second preferred stock and the common stock.

of common stock of PGE in full satisfaction of his claims thereon, including all accrued and unpaid dividends. Holders of Portland first preferred stock were to receive ⅔ of a share of common stock of PGE for each share of their stock. Holders of Portland second preferred stock and common stock were to receive nothing under the Plan and these stocks were to be cancelled. The holders of prior preference stock were to be given ten years after entry of final decree in the reorganization within which to exchange such prior preference stock for common stock of PGE.

The distributions of PGE stock under the Plan were based upon the value of the properties of Portland, including the P GE stock, as of October 31, 1945. Subsequent to October 31, 1945, PGE had earnings which were of a value equivalent to the interest accruing to the holders of Portland bonds after October 31, 1945, and to the accrual of dividends on the prior preference stock after that date.

Out of the retained earnings of PGE earned after October 31, 1945, its directors on July 7, 1947, declared a special dividend of $3 per share to be paid to the holders of the new common stock of PGE when and if such stock should be issued pursuant to the Plan. In confirming the Plan on October 11, 1947, the court found that the values of the properties of Portland as of October 31, 1945, plus the retained earnings of PGE, plus the said $3 special dividend, were a fair and equitable basis for the distribution of the assets of Portland to its security holders. It found that the distributions so computed would satisfy the claims of the bondholders, would enable the holders of the prior preference stock to receive the par value of such stock plus all accumulated dividends, and would leave some equity for the holders of the first preferred stock.

On November 12, 1947 and on December 22, 1947, the directors of PGE declared additional special dividends of 45¢ each per share to be paid to the holders of the new common stock of PGE when

and if such stock should be issued pursuant to the Plan. In addition, on March 10, 1948 and June 8, 1948, the directors of PGE declared additional dividends of 45¢ each per share to be paid to the holders of the new common stock of PGE, such dividends to be paid to stockholders of record on March 31, 1948 and June 30, 1948, respectively. As to Portland securities which had not been exchanged on those dates, such dividends were to be paid only if and when such securities were exchanged for PGE stock and then only pursuant to an assignment of such dividends by the Independent Trustees of Portland to the holders of such securities at the time of the exchange. The Independent Trustees of Portland were trustees for Portland in the bankruptcy reorganization.

Upon the consummation of the Plan Portland was to be completely dissolved and liquidated and was not to have any officers or directors.

By an order of the district court in Oregon, entered subsequent to October 11, 1947, the Bank of California was named exchange agent in order to execute the Plan in accordance with its provisions. The newly issued common stock of PGE was delivered to the exchange agent on or before February 2, 1948. The special dividends, previously referred to, were paid to the exchange agent and held for future distribution to the holders of Portland securities upon the exchanges being made.

From and after the effective date of the Plan (February 2, 1948) the holders of prior preference stock were entitled to exchange such stock for common stock of PGE, and to receive the dividends thereon. The final decree of the court fixed June 4, 1961, as the last date on which such exchange must be made under the Plan. If the exchange were not made by that date, the stock would become valueless in the hands of the holders.

Plaintiffs never exchanged their stock for common stock of PGE and never received the dividends declared on the PGE stock. Instead, plaintiffs sold their stock

at various times during 1948. During all of 1948 there was active trading in that stock, and quotations thereon were listed by the National Quotation Bureau, Incorporated, which ranged from a low of 169 to a high of 181 on the dates of sales by plaintiffs.

1. Plaintiffs contend that they were never stockholders of PGE and never received the dividends in question. While plaintiffs chose not to exchange their prior preference stock for common stock of PGE and so never directly received the dividends declared on the latter stock, they did sell their Portland stock in 1948 and it is undisputed that these sales carried the right to collect the dividends which defendant seeks to tax as income to plaintiffs. The purchasers of this stock acquired from plaintiffs the right to collect these dividends. Plaintiffs concede that they sold a "totality of rights, i. e., the tree as well as the fruit". It is incredible that the total sale price did not include the value of the accrued dividends, and they make no such contention. It is obvious that the value of the dividend rights sold was a part of the consideration which plaintiffs received when they sold their stock without exercising their right to collect the dividends themselves. Under these circumstances, for tax purposes the amounts of these dividends were constructively received by plaintiffs and they are accountable therefor as ordinary income.

Defendant relies upon the following sections of Treasury Regulation 111, under the Internal Revenue Code of 1939:

"Sec. 29.42–2. Income not reduced to possession.—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. * * *

"Sec. 29.42–3. Examples of constructive receipt.—* * * Dividends on corporate stock are subject to tax when unqualifiedly made sub-

ject to the demand of the shareholder. * * *"

Undoubtedly the underlying reason for these provisions is to be found, *inter alia*, in Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916, where the court said:

"* * * The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. * * *"

■■ It is obvious that what plaintiffs sold was the right to obtain from the exchange agent the PGE shares, with accumulated dividends, for which the shares of Portland were exchangeable. Thus, plaintiffs realized ordinary income to the extent of the amount of the dividends involved, which were in effect collected as a part of the sale price of their Portland stock. Hulbert v. Commissioner, 7 Cir., 227 F.2d 399, 401. In such circumstances, plaintiffs, as an incident to the sale of their Portland stock, disposed of their right to the income embodied in the dividends which were payable thereon. The dominant purpose of the revenue laws is the taxation of income to those who enjoy the benefit of it when paid. See Helvering v. Horst, 311 U.S. 112, 116, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, and Fisher v. Commissioner, 6 Cir., 209 F.2d 513, 515.

■ In United States v. Snow, 9 Cir., 223 F.2d 103, 108, the court said:

"The general rule is that a right to receive ordinary income, produced by a capital asset, is not transmuted into a capital asset by the sale or assignment of the capital asset together with the right to receive the ordinary income. * *"

2. Plaintiffs make the further contention that, even if they had actually received the dividends declared by PGE, such payments would have given rise to *capital gain* as cash received in liquidation of Portland. They rely on § 115(c)

of the Internal Revenue Code of 1939 [3] which provided:

"Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, * * *."

As to the $3 dividend declared on July 7, 1947, they point out that the Oregon district court found:

" * * * Said special dividend, together with said retained earnings of Portland General Electric Company allocable to the stock to be distributed to the bondholders of debtor, is of a value equivalent to the interest accruing upon the claims of the holders of the bonds of debtor subsequent to October 31, 1945, and that the portion represented by the stock to be allocated under the plan as amended to the prior preference stockholders is of a value equivalent to the accrual of dividends upon such prior preference stock subsequent to October 31, 1945.

"That the value of the properties of debtor as of October 31, 1945, together with the values of the special dividend hereinbefore mentioned and the retained earnings of Portland General Electric Company, are a fair and equitable basis for the distribution of the cash and other assets of debtor as provided in said amended plan to the security holders of debtor according to their respective claims, interests and priorities."

It is plaintiffs' theory that said $3 dividend must be regarded as a distribution in the complete liquidation of Portland and, if constructively received by plaintiffs, it must be treated as payment in exchange for their Portland prior preference stock; and that, if plaintiffs are treated as having sold the right to such $3 dividend along with their Portland stock, then the proceeds of sale must be accorded similar treatment; in

either case any gain must be taxed as capital gain.[4] They rely heavily on Kirby v. Commissioner, 35 B.T.A. 578, reversed on other grounds 5 Cir., 102 F.2d 115. However, we have examined the Kirby opinion and find that in that case ordinary dividends on stock owned by a corporation were paid to the liquidating trustees of that corporation and then distributed by them to its stockholders. Those dividends were taxable to the corporation. Of course, when they were thereafter distributed to its stockholders as a part of a complete liquidation of the corporation, the taxholders were taxable on a capital gains basis only. The case at bar presents a different situation. Here the dividends on the PGE stock were never the property of Portland and therefore could not have been distributed as a liquidating dividend of Portland. These dividends were paid to the exchange agent to hold for the stockholders who were entitled to them, which included the plaintiffs or their assignees.

Paragraph VI(C) of the Plan provides:

"Holders of Prior Preference Stock upon consummation of the Plan are to receive in full satisfaction of their claims thereon, including all accrued and unpaid dividends, for each share of such stock, 6⅓ shares of PGE Common Stock and the rights of the holders of such stock shall be modified and altered accordingly."

It included all dividends plaintiffs were entitled to as of October 31, 1945. See Petition of Portland Electric Power Co., 9 Cir., 162 F.2d 618 where the Plan was approved.

We hold that the $3 and subsequent dividends on PGE stock were not liquidating distributions but were distributions of earned profits of PGE, a going concern, and are to be treated as ordinary dividends.

---

3. 26 U.S.C.A. (1939) § 115(c).

4. Plaintiffs also contend that the dividends declared on November 12, 1947, December 22, 1947, March 10, 1948 and June 8, 1948 must be treated the same as the $3 dividend.

For the reasons herein stated, the order of the district court from which plaintiffs appeal is affirmed.

Affirmed.

MAJOR, Circuit Judge (dissenting).

My conviction that this case should be reversed is such that I feel compelled to dissent. Judge SCHNACKENBERG has made an adequate statement of the facts and I disagree only with the rule which he applies thereto.

The government relies upon the theory of constructive receipt in holding plaintiffs accountable for the dividends as ordinary income. It appears to waver, however, as to the time of such receipt. It states in its brief, " * * * the dividend income was clearly realized by taxpayers in 1948, and it was so realized not later than the dates when collected as part of the proceeds of the sales of the Portland stock."

In my opinion, the rights and liabilities of Portland shareholders were definitely fixed on February 2, 1948, when the Plan of Reorganization was confirmed. On that date plaintiffs and other shareholders, as well as their assignees, acquired a right, an option, which was exercisable at any time within ten years. The Plan provided a formula by which Portland shareholders, upon compliance with the terms and conditions thereof, might at their option acquire PGE shares. If Portland shareholders desired to exercise the option thus afforded them, it was required that they exchange their shares for those of PGE upon which dividends had been declared. It was further required that they become record owners of PGE shares and, even then, they were entitled to dividends only "pursuant to an assignment of dividends from the independent trustees of Portland Electric Power Company to such shareholders."

How it can be thought or held under such circumstances that plaintiffs as shareholders of Portland had an unfettered and unqualified right to the receipt of dividends declared on PGE shares and made payable only to the record holders thereof is not discernible to me. Plaintiffs never owned any PGE shares and, in the exercise of a right provided by the Plan, were not required to become such owners.

The government emphasizes the point that plaintiffs' shares would have become valueless upon failure to exchange within ten years, thus intimating that sooner or later they would have been under an economic compulsion to make such exchange. The theory is not tenable. Taxwise, it was no concern of the government if plaintiffs, exercising the rights conferred by the Plan, improvidently held their shares until they became of no value. At any rate, I am aware of no law which requires a person to produce income. The farmer has a right to permit his fields to lie idle, and the merchant or professional man can close the doors to his business or office, even for the express purpose of avoiding income. Plaintiffs, under the circumstances, had the same right relative to their Portland shares.

The constructive receipt theory must be predicated upon the fictional premise that the PGE shares were constructively received by plaintiffs and, having been thus received, the dividends declared thereon were also constructively received. Thus, one constructive receipt is imposed upon another. I know of no case which supports this two-fold imposition of the theory.

The theory relied upon is perhaps best illustrated in Helvering v. Horst, 311 U. S. 112, 61 S.Ct. 144, 85 L.Ed. 75, which has been often cited and followed. There, a father, owner of negotiable bonds, detached therefrom interest coupons before their due date and delivered them to his son who collected them at maturity but in the same year. It was held that the father was accountable for the interest represented by the coupons on the theory of constructive receipt. Obviously, the father as owner of the bonds had the unqualified and unfettered right to the receipt of such interest. Suppose, however, that the interest of the father in that case had been limited

to an option, exercisable at will, to purchase the bonds with the coupons attached. Could it be seriously contended that he would be required to account for as ordinary income the interest earned on such bonds? Coming closer to the instant situation, suppose that the father had sold and assigned his option at a price enhanced by reason of the attached interest coupons. Again, could it be seriously contended that he would have been accountable for ordinary income on account of the enhanced value thus received for his option? Pursuing the supposition further, could it be contended that the purchaser of the option would have been accountable for the interest coupons prior to the time the option was exercised and he became the owner of the bonds?

I think the answer to these suppositions must be in the negative for the reason that neither the father nor the purchaser of the option was the owner of the tree from which the fruit was produced. In other words, they did not have an unqualified and unfettered right to receipt of interest. That right could come into existence only upon exercise of the option, which they could do or not, at their own discretion. I see no difference in the facts of these supposititious cases from those of the instant situation. They distinguish this case not only from Horst but from other cases which have followed Horst and which have applied the doctrine of constructive receipt.

The opinion states, "The purchasers of this stock acquired from plaintiffs the right to collect these dividends." In my view, this is an erroneous statement and highlights the fallacy of the reasoning employed by Judge SCHNACKENBERG. It is true, of course, that the purchaser became endowed with an option which when and if exercised would result in the receipt of the dividends by him. This option privilege came from the Plan and not from the conveyance. Nothing was conveyed by plaintiffs other than their Portland stock. The sale or assignment alone of such dividends would have been of no value to the purchaser. Conversely, the reservation from the sale of such dividends would have been of no value to plaintiffs. This is so for the reason that plaintiffs as shareholders of Portland did not have an unqualified and unfettered right to the receipt of dividends which had been declared on PGE shares.

This constructive receipt theory, if applicable, could produce the incongruous result of numerous taxpayers being held accountable for the same dividends. The Portland shares might have been sold many times before they reached a purchaser who was willing to exchange such shares for those of PGE and thereby receive the dividend. It happens in the instant case that the purchaser elected to make the exchange and receive the dividends. The stipulation entered in the case includes the claim for refund filed by plaintiffs. That claim discloses without denial that such exchange was made by the purchaser who reported as ordinary income the amount received as dividends and paid the tax thereon. Thus, both plaintiffs as sellers of Portland shares and the purchaser of such shares have been taxed upon the same dividend income. It is interesting, although perhaps immaterial, to contemplate how the government would defend its right to collect from different parties a tax upon the same income. This situation, however, furnishes strong support for my position, that is, that only an owner of Portland shares who elected to exercise his option of making an exchange for PGE shares was accountable for dividend income.

I would reverse and remand the case, with directions that a judgment be entered in favor of plaintiffs.